**LINK: 652, 653**

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| James Nolan et al., Plaintiffs, vs. City of Los Angeles et al., Defendants. | ) | **Case Nos. CV 03-02190 GAF (AJWx) CV 04-08592 GAF (JWJx) CV 07-06782 GAF (JWJx)√** ORDER & MEMORANDUM REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

Plaintiffs, officers in the Los Angeles Police Department ("LAPD"), sued the City of Los Angeles ("Defendant") for alleged violations of the wage and overtime provisions of the Fair Labor Standards Act ("FLSA") in three related actions: Nolan et al. v. City of Los Angeles et al., CV 03-02190 GAF (AJWx); Alaniz et al. v. City of Los Angeles et al., CV 04-08592 GAF (JWJx); and Mata et al. v. City of Los Angeles et al., CV 07-06782 GAF (JWJx).[1] The parties now present the Court with what are essentially cross-motions for summary judgment on one of the principal issues in this case: whether the LAPD must compensate sworn officers for hours worked in excess of a scheduled tour of duty (152 to 156 hours per 28-day deployment period), but falling below the FLSA 28-day overtime threshold of 171 hours set forth in 29 U.S.C. § 207(k), which is commonly referred to as "gap time." Defendant contends that hours worked in the gap need not be compensated unless an officer exceeds the 171-hour

[1] The Court consolidates these actions for purposes of the present motions.

threshold. Plaintiffs reject this "gap time rule" and contend that they are entitled to straight time pay for all gap time work, regardless of whether they exceed the 171-hour threshold.

FLSA jurisprudence teaches that the gap time rule applies to law enforcement organizations that have established a regularly recurring 28-day work period. The undisputed evidence before the Court demonstrates that, since 2000, the LAPD annually schedules the work of its officers in thirteen 28-day deployment periods. The annual deployment periods are disseminated to all officers in all divisions within the LAPD in November each year; specific assignments within a given deployment period are established during the third week of the preceding deployment. Although the Ninth Circuit has not expressly addressed the issue, the most persuasive out-of-circuit authority holds that a claim for pure gap time compensation is untenable unless the plaintiff can prove that the employer violated FLSA's minimum-wage or overtime-pay requirements. See Monahan v. County of Chesterfield, 95 F.3d 1263, 1280 (4th Cir. 1996).

Thus, the Court holds that LAPD officers are not entitled to overtime compensation for hours worked in the gap.[2] Defendant's motion for partial summary judgment is **GRANTED**, and Plaintiffs' cross-motion for summary judgment is **DENIED**. The Court explains its reasoning in greater detail below.[3]

---

[2]Under the applicable collective bargaining agreement, LAPD officers are entitled to daily overtime pay for hours worked in excess of the Flexible Work Schedule. This ruling is not meant to affect, limit, or undermine any such right to overtime compensation.

[3]Plaintiffs also moved to strike the Maislin and Nguyen declarations on a number of evidentiary grounds. The Court finds Plaintiffs' arguments in support of their motion to be unavailing. Accordingly, the motion to strike is **DENIED**.

As to Defendant's requests for judicial notice, the Court finds that it may take judicial notice of the parties' memoranda of understanding, the 2004 Department of Labor opinion letter, and the court's summary judgment order in Abbe et al. v. City of San Diego et al., No. 05cv1629 (Docket No. 491) (S.D. Cal. Aug. 18, 2008) pursuant to Rule 201 of the Federal Rules of Evidence. The information contained in the memoranda is not subject to reasonable dispute, as evidenced by the parties' attachment of identical copies of the memoranda as exhibits; the information in the opinion letter is generally known within the jurisdiction; and the Court may take

(continued...)

## II. BACKGROUND

From at least the year 2000, Defendant has maintained a 28-day deployment period pursuant to § 207(k) of the FLSA for sworn LAPD officers. (See Nguyen Decl., Ex. D [Deployment Schedules].) The deployment period is reflected in the terms of the Memorandum of Understanding ("MOU"), the collective bargaining agreement that governs the employment terms and conditions of sworn LAPD officers. (See Maislin Decl. ¶ 4; see, e.g., id., Ex. C [2006 MOU at 23–25].) Defendant maintains thirteen 28-day "deployment periods" per calendar year. (Nguyen Decl., Ex. D [Deployment Schedules].) Each deployment period begins at 12:00 a.m. on Sunday morning and ends at 12:00 a.m. exactly four weeks later. (Nguyen Decl. ¶ 7.) The deployment schedule for each upcoming period is prepared during the third week of the preceding period. (Id.; see also Maislin Decl., Ex. C [at 28].) The deployment schedule for each upcoming year is distributed in the preceding November, and is disseminated at that time to all divisions within the LAPD. (Nguyen Decl. ¶ 7.)

Under the current MOU, officers are entitled to overtime pay for any hours worked in excess of their Flexible Work Schedule work hours on a given work day. (Maislin Decl., Ex. C [at 47].) This means that an officer who is scheduled to work a nine-hour shift is entitled to overtime pay for any work performed in excess of that shift. The MOU defines this form of overtime compensation as "non-FLSA overtime." (Id. [at 49].) In addition to non-FLSA overtime, LAPD officers are entitled to overtime compensation under the FLSA for all hours worked in excess of 171 hours per 28-day work period. (Id.)

In general, LAPD officers' work schedules and vacation dates are scheduled in accordance with the 28-day deployment periods. (Nguyen Decl. ¶ 7.) Under Defendant's Flexible Work Schedule Plan, LAPD officers may choose among shifts

---

[3](...continued)
judicial notice of public records such as the Abbe order, see Wilbur v. Locke, 423 F.3d 1101, 1112 (9th Cir. 2005). Accordingly, Defendant's requests for judicial notice are **GRANTED**.

varying between eight and 12 hours. (Maislin Decl., Ex. C [at 24].) Thus, a normal tour of duty for a given officer will range from 150 to 156 hours per 28-day deployment period (see id. at 25), meaning that the relevant "gap" for LAPD officers ranges from 15 to 21 hours per deployment period.

## III. DISCUSSION

The parties' cross-motions raise two principal issues the Court must address. First, the Court must determine whether Defendant has established a 28-day work period for sworn LAPD officers who perform law enforcement functions, such that Defendant is partially exempt from the FLSA's overtime compensation requirements.[4] If it finds that the partial exemption applies, the Court must then determine whether Plaintiffs are entitled to straight-time compensation for hours worked in the gap when they have not reached the 171-hour overtime threshold.

### A. LEGAL STANDARD FOR MOTIONS FOR PARTIAL SUMMARY JUDGMENT

A party may move for summary judgment "on all or part of [a] claim." Fed. R. Civ. P. 56(a). On a motion for summary judgment, a court must presume that the nonmovant's evidence is true, and draw all justifiable inferences in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

[4]At oral argument, Plaintiffs submitted that some sworn LAPD officers do not perform law enforcement functions. If any such officers are parties in the present actions, Plaintiffs should notify this Court of their identities during class certification. And while the Court agrees that the section 207(k) exemption would not apply to LAPD officers who do not engage in law enforcement activities, cf. 29 C.F.R. § 553.230(b), Plaintiff has not produced, and the Court has not found, any case law suggesting that such officers' presence in the present lawsuits affects the applicability of § 207(k) to officers who do perform law enforcement functions.

475 U.S. 574, 587 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. The moving party bears the burden of demonstrating the absence of genuine issues of material fact. Id. at 256. Once the moving party has carried its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Fed. R. Civ. P. 56(e)(2).

**B. THRESHOLD ISSUES**

Plaintiffs raise several threshold issues that the Court briefly addresses before analyzing the parties' substantive arguments. First, Plaintiffs contend that Defendant's Motion is (1) "premature" as to plaintiffs Alaniz and Mata because discovery is still pending in their respective cases, (2) beyond the scope of the Court's July 2, 2008 Order (CV 03-02190, Docket No. 651) requiring the parties to brief the gap time issue, and (3) untimely as to plaintiff Nolan because the date for dispositive motions in his case has passed. The Court finds that these arguments lack merit and rejects them summarily.

Plaintiffs also request limited discovery on the issue of whether Defendant has established a § 207(k) exemption. Under the Federal Rules of Civil Procedure, "[i]f a party opposing [a motion for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . order a continuance" to allow that party to seek additional discovery. Fed. R. Civ. P. 56(f). When a party opposing a motion for summary judgment requests a continuance under Rule 56(f), the court must determine the merits of that request before granting summary judgment. Garrett v. San Francisco, 818 F.2d 1515, 1518–19 (9th Cir. 1987). "The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment." Nidds v. Schindler Elevator Corp., 113 F.3d 912, 921 (9th Cir. 1996) (citation omitted). A party is entitled to a grant of its Rule 56(f) request if it makes a timely application that specifically identifies relevant information, and there is some

basis for believing that the information actually exists. Visa Int'l Serv. Ass'n v. Bankcard Holders of Am., 784 F.2d 1472, 1475 (9th Cir. 1986). By contrast, courts have denied Rule 56(f) applications where the evidence sought "was almost certainly nonexistent or was the object of pure speculation." Id. at 1475–76. Further, a request for additional discovery made in a memorandum or declaration does not qualify as a motion under Rule 56(f), and can be denied on this ground alone. Brae Transp., Inc. v. Coopers & Lyband, 790 F.2d 1439, 1443 (9th Cir. 1986). Finally, the court may deny a request for additional discovery where the party seeking the continuance has not diligently pursued discovery in the past. Nidds, 113 F.3d at 921; Brae Transp., 790 F.2d at 1443; see also Clark v. Capital Credit & Servs., Inc., 460 F.3d 1162, 1179 (9th Cir. 2006).

Here, Plaintiffs have not formally requested additional discovery, but have simply "assert[ed]" in their reply brief "that they should be permitted to conduct discovery under [Rule] 56(f) to ferret out . . . Defendant's factual assertions" that Plaintiffs are salaried employees and that Defendant established a 28-day work period under § 207(k). (Pls.' Reply Br. & Opp. at 3; see also Senf Reply/Opp. Decl. ¶¶ 5–6.) Because Plaintiffs have not filed an affidavit "setting forth the particular facts" they expect to glean from the requested discovery, their Rule 56(f) request is **DENIED**. See Brae Transp., 790 F.2d at 1443.

But even if Plaintiffs had submitted a proper affidavit, they would not be entitled to additional discovery because they have not proffered sufficient facts to establish that the information they seek exists and would prevent summary judgment. The evidence Plaintiffs offer in support of their contention that they are hourly employees includes the MOUs and the trial testimony of Truc Nguyen, Defendant's Senior Management Analyst II and the "Officer-in-Charge" of the LAPD's FLSA Compliance Unit, who testified in Maciel v. City of Los Angeles, CV 06-00249 RSWL (CWx), that Defendant's payroll system "assumes that each employee works 80 hours bi-weekly." (See Senf Reply/Opp. Decl. ¶ 4; Ex. B [Nguyen Trial Tr.] at 000367–68.)

But the notion that pay or work cycles or payroll systems based on 80-hour periods evince hourly-employee status or the inapplicability of § 207(k) has generally been rejected. See 29 C.F.R. § 553.224(a); Adair v. City of Kirkland, 185 F.3d 1056, 1061 (9th Cir. 1999). Therefore, any information regarding LAPD officers' varying shifts or Defendant's payroll systems would not preclude this Court from granting summary judgment in Defendant's favor on the § 207(k) applicability issue.

Additionally, Plaintiffs have known for some time that Defendant intends to claim the § 207(k) exemption, given that all three MOUs in evidence in this case expressly state that the LAPD has implemented a 28-day deployment period pursuant to § 207(k) since at least 1990. (See Senf Decl., Ex. 1 at 005; Ex. 2 at 155; Ex. 3 at 247.) In fact, in the Joint Scheduling Conference Report (Docket No. 485) that the parties filed over eight months ago on March 17, 2008, Plaintiffs indicated that, while they would presume the applicability of § 207(k) for purposes of deciding the "gap time" issues, they would "seek to take limited discovery regarding the establishment and application of the [§ 207(k)] exemption by the LAPD." (Joint Sched. Conf. Report at 5 n.2.) Plaintiffs have not diligently pursued discovery on the applicability issue, in all likelihood because the relevant facts are well known to both parties. Accordingly, there is no basis for delaying the present ruling to permit additional discovery.

## C. APPLICABILITY OF § 207(k)

The FLSA requires employers to pay their employees no less than one-and-one-half times the regular rate for work that exceeds 40 hours per week (i.e., for "overtime" work). 29 U.S.C. § 207(a)(1). To accommodate the needs of employers whose work requirements may not conform to the standard 40-hour week, Congress established a number of exemptions to the 40-hour-week rule, including a partial exemption for public agencies engaged in fire protection or law enforcement tasks. Id. § 207(k). Section 207(k) and the applicable regulations provide that, in a 28-day work period that meets all pertinent requirements, law enforcement personnel are entitled to overtime compensation for all hours worked in excess of 171 hours. 29

C.F.R. § 553.201(a) (2007); see also id. § 553.230(b). This rule gives qualifying public employers "greater flexibility to select the work period over which the overtime limit will be calculated," Adair, 185 F.3d at 1060, and is "'intended to ease the overtime burdens of certain public employers by allowing them to average their employees' duty hours over the designated work period,'" Spradling v. City of Tulsa, 95 F.3d 1492, 1504 (10th Cir. 1996) (quoting Avery v. City of Talladega, 24 F.3d 1337, 1344 (11th Cir. 1994)).

An employer invoking § 207(k) bears the burden of showing that it qualifies for the exemption and that it has established a regularly recurring work period pursuant to § 207(k). Adair, 185 F.3d at 1060. This conforms to "the general rule that the application of an exemption under the [FLSA] is a matter of affirmative defense on which the employer has the burden of proof." Corning Glass Works v. Brennan, 417 U.S. 188, 196–97 (1974). To prove the establishment of a § 207(k) work period, an employer must show that (1) it specified an alternative work period in the collective bargaining agreement, and (2) the alternative work period is "regularly recurring," i.e., the employer follows it in actual practice. Adair, 185 F.3d at 1060–61.

**1. SPECIFICATION OF ALTERNATIVE WORK PERIOD IN THE MOUS**

The three MOUs entered into between 2000 and 2006 by Defendant and the Los Angeles Police Protective League, the bargaining organization for LAPD officers, contain an express declaration that "Management and the League agree that Management has adopted the partial overtime exemption of 29 United States Code (U.S.C.) § 207(k) for employees entitled to receive overtime pursuant to this MOU." (Maislin Decl., Ex. A [at 18]; Ex. B [at 23]; Ex. C [at 23].) It is therefore undisputed that Defendant has publicly declared its intent to create an alternative work period pursuant to § 207(k), and Plaintiffs do not argue or provide any evidence to the contrary.

**2. REGULARLY RECURRING 28-DAY WORK PERIOD**

Section 207(k) therefore applies if the LAPD has implemented, in actual practice, a regularly recurring 28-day deployment period for sworn officers who perform law enforcement functions. On that issue, the material facts are without substantial controversy and unequivocally establish that the LAPD's Flexible Work Schedule Plan satisfies the requirements of the § 207(k) exemption.

**a. Defendant's Evidentiary Support**

Defendant has proffered a number of evidentiary materials to support its argument that it follows a regularly recurring 28-day work period pursuant to § 207(k). First, Defendant has disclosed a set of "LAPD Deployment Schedules" for the years 2000 to 2008. (Nguyen Decl., Ex. D.) The Deployment Schedules consist of 13 four-week calendars (the first calendar on each page is the same as the last calendar on the previous page) that set out sworn and civilian holidays, the dates on which pay periods end, and paydays. (See id.)

In addition, Defendant has offered evidence, by way of declaration, that the 28-day deployment periods are programmed into Defendant's "computer overtime system." (Nguyen Decl. ¶ 6.) FLSA overtime is paid, and sworn employees' work schedules and vacations are determined, in accordance with that deployment period. (Id. ¶ 7.) The LAPD's Chief of Police disseminates the "deployment schedule" for the coming year in November of each year. (Id.) Work schedules for sworn employees are prepared four weeks at a time, with the final schedule for the upcoming deployment period posted by noon on the preceding Wednesday. (Id.) This scheduling process is repeated each deployment period. (Id.)

Finally, the current MOU expressly states that "[e]ach employee shall normally be compensated for 160 hours in each 28-day [deployment period]." (Maislin Decl., Ex. C [at 24].) The MOU also refers to both "FLSA overtime" and "non-FLSA overtime," defining the former as "hours actually worked by a sworn employee of the LAPD during a 28-day work period (deployment period) which exceeds 171 hours."

(Id. [at 49].) And in another provision, the MOU distinguishes between the 28-day deployment period and a standard five-day/40-hour work week, stating that "[w]hen an employee is expected to be absent for one or more [deployment periods] . . . , that employee's work schedule shall be converted to a five-day/40-hour work week." (See id. at [31].)

This evidence, when viewed in its entirety, establishes that Defendant has established a regularly recurring 28-day deployment period.

**b. Plaintiffs' Evidence & Counter-Arguments**

Plaintiffs offer virtually no evidence in response to Defendant's Motion for Summary Judgment. Besides the MOUs, the only evidentiary materials accompanying Plaintiffs' Opposition are transcripts of the trial testimony of Nguyen and Nam Huyhn, Defendant's Director of Systems, in Maciel. (See Senf Reply/Opp. Decl., Exs. A, B.) These transcripts do not create a genuine issue of material fact as to whether Defendant established a § 207(k) work period, because they largely focus on Defendant's pay cycles and payroll system and processes, and whether the payroll system is designed to distinguish between FLSA overtime and non-FLSA overtime hours. But as explained below, a public employer's payroll structure and systems have no bearing on the implementation of a regularly recurring alternative work period. Moreover, some of the testimony in the transcripts directly supports Defendant's argument that Defendant has established a 28-day work period under § 207(k). (See, e.g., Senf Decl., Ex. B [Nguyen Trial Tr. at 000380–82]) (discussing the Flexible Work Schedule and the 171-hour threshold).) Because Plaintiffs do not offer evidence that creates a genuine issue of fact concerning whether Defendant has established a 28-day work period pursuant to § 207(k), Defendant is entitled to partial summary judgment on that issue. See Fed. R. Civ. P. 56(e); C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc., 213 F.3d 474, 480 (9th Cir. 2000) (stating that the nonmoving party on a motion for summary judgment "must present significant probative evidence tending to support its claim or defense").

Lacking sufficient probative evidence to create a genuine issue of fact as to the applicability of § 207(k), Plaintiffs raise a number of arguments to establish that Defendant has not satisfied its burden. First, Plaintiffs contend that the MOU provisions do not establish that Defendant actually implemented a 28-day work period, arguing that "the fact that the [LAPD's] threshold for paying overtime under the [MOU] is different from that applicable to a [§ 207(k)] work period of equal length is sufficient to support the inference that the City did not establish a [§ 207(k)] work period." (Pls.' Reply/Opp. at 13:12–15.) In support of their position, Plaintiffs cite McGrath v. City of Philadelphia, 864 F. Supp. 466 (E.D. Pa. 1994), which held that "the fact that the threshold for paying overtime under the collective bargaining agreement differs from that applicable to a [§ 207(k)] work period of 13 days, although not dispositive, could support an inference that the City did not establish a [§ 207(k)] work period." Id. at 479. However, at least two circuit courts have rejected the notion that an employer must restructure its overtime payment practices if it adopts a work period under § 207(k). The Tenth Circuit has held that "[an] employer is not required to restructure its overtime payment practices whatsoever" after it adopts a specified work period under § 207(k). Lamon v. City of Shawnee, 972 F.2d 1145, 1151–52 (10th Cir. 1992) (stating that a contrary position "flies in the face of the federal regulations promulgated under FLSA"). The Eleventh Circuit has similarly found that a public employer does not waive the advantages of the § 207(k) exemption merely because it pays overtime for work exceeding 40 hours in a given week. Birdwell v. City of Gadsden, 970 F.2d 802, 806 (11th Cir. 1992). The Court agrees with the position espoused by Lamon and Birdwell and the reasoning behind those decisions, and finds that Defendant's provision of non-FLSA overtime does not support an inference that Defendant did not establish a § 207(k) exemption.

Second, Plaintiffs posit that Defendant's Flexible Work Schedule Plan, which sets forth 12-hour, 10-hour, 9-hour, and 8-hour duty cycles for sworn personnel, is evidence that Defendant has not established a regularly recurring work period. (Pls.'

Reply/Opp. at 14:2–4.) In support, Plaintiffs cite O'Brien v. Town of Agawam, 350 F.3d 279, 291 (1st Cir. 2003), O'Hara v. Menino, 312 F. Supp. 2d 99, 106 (D. Mass. 2004), Taylor v. County of Fluvanna, 70 F. Supp. 2d 655 (W.D. Va. 1999), and McGrath, 864 F. Supp. 466. These cases, however, do not support Plaintiffs' position because none of the cases held that a public employer cannot implement flexible duty cycles, or alternate officers' duty cycles from one work period to the next, if it implements an alternative work period pursuant to § 207(k).

In O'Brien, the court found that the defendant employer had not established a regularly recurring alternative work period where officers worked repeating six-day work cycles (four days on and two days off), and the collective bargaining agreement expressly stated that the applicable work period was six days. 350 F.3d at 291. Similarly, in O'Hara, the court found that the defendant employer had not adopted a regularly recurring alternative work period where officers worked repeating six-day work cycles (four days on and two days off), the evidence showed that the defendant had not taken steps "to adopt a qualifying work plan," and the parties had stipulated that the defendant employer had not adopted the § 207(k) exemption. 312 F. Supp. 2d at 106. The facts in the present case are distinguishable, because Defendant has produced evidence indicating that it has adopted a 28-day work period, including express language in the MOUs. Moreover, O'Brien expressly recognized that a "'work period can be of any length, and it need not coincide with [the officers'] duty cycle or pay period or with a particular day of the week or hour of the day.'" Id. at 291 n.21 (alteration in original) (quoting 29 C.F.R. § 523.224(a)).

In Taylor, the court held that the employer had not established a regularly recurring 28-day work period, reasoning in part that the employer's "pay periods, duty cycles, and vacation and sick day accruals were all based on the calendar month." 70 F. Supp. 2d at 660. In the present case, the evidence is undisputed that Defendant's Flexible Work Schedule Plan provides for 8-to-12-hour shifts that require its officers to work a specified number of days and specify the accrual of holiday time ***per 28-day***

***work period***. (See Maislin Decl., Ex. C [2006 MOU at 24–25].) This evidence distinguishes the present case from Taylor and supports Defendant's position that it has established a regularly recurring 28-day work period.

In McGrath, the court refused to find that the defendant employer had implemented an alternative work period as a matter of law because the overtime threshold for non-FLSA overtime differed from the threshold applicable to a 13-day work period under § 207(k), and because the collective bargaining agreement "[did] not actually use the phrase 'work period.'" 864 F. Supp. at 479. The Court disagrees that adoption of an alternative work period under § 207(k) precludes an employer from paying non-FLSA-based overtime based on some other threshold. Indeed, Lamon, a case on which Plaintiffs rely heavily in their papers, expressly rejected this position and concluded that a practice of paying overtime for hours worked in excess of 40 per week does not preclude application of the § 207(k) exemption because an employer need not "restructure its overtime payment practices whatsoever" after adopting an alternative work period. 972 F.2d at 1151–52, 1154. Furthermore, McGrath itself recognized that a public employer that implements an alternative deployment period may also implement flexible work schedules without adversely affecting the exemption's applicability. See McGrath, 864 F. Supp. at 476–77. Thus, the fact that Defendant pays time-and-a-half for any work in excess of an officer's flexible work schedule hours (either eight, nine, ten, or 12 hours per day) has no bearing on its ability to adopt an alternative work period under § 207(k).

Additionally, the applicable FLSA regulations directly undermine Plaintiffs' position because they provide that a § 207(k) work period need not coincide with officers' duty cycles. See 29 C.F.R. § 553.224(a). Thus, so long as Defendant's 28-day cycle remains unchanged, Defendant may vary officers' schedules and days off without adversely affecting the applicability of § 207(k). See Birdwell, 970 F.2d at 806 (holding that a directed verdict in the Defendant's favor on the § 207(k) issue was

proper where the evidence showed that officers worked seven-day cycles, but the defendant employer would vary which days officers could take off).

Finally, Plaintiffs argue that Defendant is foreclosed from adopting the partial exemption under § 207(k) because Defendant's payroll system operates on an 80-hour, bi-weekly basis and "not per 28-day deployment period." The Ninth Circuit squarely rejected this contention in Adair. There, the plaintiff officers asserted that the defendant city's failure to conform its payroll practices to the terms of its § 207(k) plan raised an issue of material fact as to the establishment of the § 207(k) exemption. 185 F.3d at 1061. The Ninth Circuit held that "the City's failure to conform its payroll practices does not negate the existence of the [§ 207(k)] plan. . . . [I]t does not contradict the fact that a general § 207(k) exemption was established." Id. (emphasis added). The FLSA regulations are in accordance, providing that a work period "need not coincide . . . with the pay period." See 29 C.F.R. § 553.224(a). The Lamon court also rejected Plaintiffs' position when it stated it was "unaware of any authority supporting the contention that an employer, once having elected the subsection (k) option, must structure pay periods to be co-extensive with the chosen work period." 972 F.2d at 1151. Thus, Defendant's payroll practices are irrelevant in this context.

**3. Conclusion Re: Applicability of § 207(k)**

Defendant has produced competent and persuasive evidence establishing that it implemented a 28-day work period pursuant to § 207(k). Plaintiffs have not produced any evidence or raised any meritorious arguments that establish a genuine issue of material fact as to the applicability of § 207(k). Accordingly, on the basis of the undisputed facts and those that are without substantial controversy, the Court concludes as a matter of law that Defendant implemented a 28-day work period under § 207(k) of the FLSA.

**D. PLAINTIFFS' ENTITLEMENT TO GAP TIME COMPENSATION**

Having concluded that Defendant has established a 28-day work period pursuant to § 207(k), the next question the Court must address is whether Plaintiffs are entitled to gap time compensation as a matter of law if they do not meet the 171-hour overtime threshold requirement.[5]

The Ninth Circuit has defined "gap time" as "time that is not covered by the overtime provisions because it does not exceed the overtime limit, and . . . that is not covered by the minimum wage provisions because, even though it is uncompensated, the employees are still being paid a minimum wage when their salaries are averaged across their actual time worked." Adair, 185 F.3d at 1062 n.6. Here, Defendant typically schedules its officers for 150- to 156-hour work cycles. (Maislin Decl., Ex. C [2006 MOU at 23–25].) Officers are not paid for FLSA overtime until they work 171 hours in a given cycle, meaning that the potential gap time at issue in this case ranges from 15 to 21 hours per work period.

The issue of whether pure gap time work is compensable under the FLSA is an open question in the Ninth Circuit. See Adair, 185 F.3d at 1062 n.6. However, the majority of courts that have addressed the issue—including district courts within the Ninth Circuit—have held that a claim for gap time compensation under the FLSA does not lie unless the plaintiff can prove a violation of the FLSA's minimum-wage or maximum-hour requirements. Plaintiffs ask this Court to disregard the reasoning behind those cases, but present no persuasive argument in support of their request.

The leading case on the issue of gap time compensation is Monahan v. County of Chesterfield, 95 F.3d 1263 (4th Cir. 1996). Monahan held that "there is no cause of action under the FLSA for pure gap time when there is no evidence of a minimum wage or maximum hour violation by the employer." Id. at 1280. In other

---

[5]At oral argument, Defendant conceded that Plaintiffs are entitled to straight-time compensation for hours worked in the gap when they exceed the 171-hour threshold. Accordingly, the Court limits its discussion to the question whether gap time work is compensable when the 171-hour threshold is not met—so-called "pure gap time" compensation.

words, "[i]f [an] employee has not worked any overtime and has received an hourly wage equal to or in excess of the statutory minimum wage, there can be no FLSA violation. If the same employee has worked overtime and has been paid properly for all overtime hours worked, then again there has been no FLSA violation." Id. at 1281.

Plaintiffs attack Monahan's holding and reasoning, and attempt to distinguish it on a number of grounds. First, Plaintiffs argue that in Lamon, 972 F.2d 1145, the Tenth Circuit created a split of authority regarding gap time compensation by concluding that meal time falling within the gap that is adjudged to be compensable is compensable at the regular rate of pay, even if an officer has not exceeded the 171-hour threshold. Id. at 1155. But Monahan persuasively explains that Lamon was principally concerned over the ***pay rate*** for time which was otherwise compensable under the FLSA—specifically meal time rates during the gap period—and did not address the gap time rule at issue here. 95 F.3d at 1269–72. More recent cases addressing the issue of pure gap time compensation have overwhelmingly sided with Monahan. See, e.g., Maciel v. City of Los Angeles, 569 F. Supp. 2d 1038, 1055–56 (C.D. Cal. 2008); Abbe v. City of San Diego, No. 06cv0538, 2007 WL 4146696, slip op. at 14 (S.D. Cal. Nov. 9, 2007); Robertson v. Bd. of County Comm'rs, 78 F. Supp. 2d 1142, 1159 (D. Colo. 1999); Braddock v. Madison County, 34 F. Supp. 2d 1098, 1109–1112 (S.D. Ind. 1998).

Second, Plaintiffs contend that the Court should permit them to assert a "pure gap time claim" because, among other things, Plaintiffs are paid overtime for all work exceeding their Flexible Work Schedule work hours on a given day, and because Plaintiffs are hourly employees. However, as explained above, whether Plaintiffs are entitled to receive non-FLSA overtime has no bearing on whether they are entitled to gap time compensation under the FLSA. Moreover, Plaintiffs emphasize the distinction between salaried and hourly employees to distinguish the present action from Monahan, which Plaintiffs contend focused on compensation paid to salaried employees. But the salaried/hourly distinction is largely irrelevant to the question of

gap time compensation, because it does not affect whether there has been a minimum-wage or maximum-hour violation. Even if a plaintiff is an hourly employee, she must look to contract law for relief if she cannot prove a minimum-wage or maximum-hour violation. Monahan, 95 F.3d at 1284. Moreover, the issue is largely moot because Plaintiffs conceded at oral argument that LAPD officers and detectives are salaried employees.

Third, Plaintiffs claim that the "philosophical view" of the FLSA upon which Monahan is based does not accord with the legislative intent of the enacting Congress. Monahan, however, is consistent with the general policy that underlies the FLSA:

> The core rights and obligations the FLSA creates are the minimum wage levels and entitlement to overtime pay for work above specified maximum hours . . . . The general "remedial purpose" of the FLSA does not support its expansion to a mechanism for employees to enforce a broad range of employers' contractual obligations beyond the minimum wage and overtime requirements enacted by Congress.

Braddock, 34 F. Supp. 2d at 1112.

Finally, Plaintiffs state that "it is completely illogical to conclude that an employer should be permitted to fail to compensate its employees for all hours at their agreed upon regular rate provided it manages to keep any extra work by a [§] 207(k) employee within the [gap]." (Pls.' Mot. at 11.) Such an outcome is perfectly logical, however, when one considers that the FLSA is primarily a vehicle for preventing and remedying minimum-wage and maximum-hour violations, and that other legal claims, such as breach of contract, are available to those who claim that they are not being fully compensated for all of the work they perform.

In sum, Plaintiffs have not presented the Court with sufficiently persuasive arguments to warrant diverging from the majority view regarding gap time compensation espoused in Monahan. Accordingly, Plaintiffs' motion for summary judgment is **DENIED**.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion for partial summary on the issue of the applicability of § 207(k) and Defendant's requests for judicial notice are **GRANTED**. Plaintiffs' motion for summary judgment on the issue of pure gap time compensation, Plaintiffs' Rule 56(f) request for additional discovery, and Plaintiffs' motion to strike are **DENIED**.

**IT IS SO ORDERED.**

DATED: December 1, 2008

Gary Feess

Judge Gary Allen Feess
United States District Court