**LINK: 666, 667, 672, 677**

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES NOLAN et al., | **Case Nos.   CV 03-02190 GAF (AJWx)** |
| Plaintiffs, | **CV 04-08592 GAF (JWJx)** |
| | **CV 07-06782 GAF (JWJx) √** |
| vs. | |
| CITY OF LOS ANGELES et al., | MEMORANDUM & ORDER |
| | REGARDING CROSS-MOTIONS |
| Defendants. | FOR PARTIAL SUMMARY JUDGMENT |

## I.  INTRODUCTION

The Los Angeles Police Department ("LAPD") employs approximately 10,000 police officers.  Many of those officers have joined as plaintiffs in one or more of the present lawsuits, which the Court has consolidated for present purposes.  Plaintiffs seek, among other things, overtime compensation pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a), for time spent donning and doffing their police uniforms and safety equipment, including time spent cleaning and maintaining their equipment.

Presently before the Court are the parties' cross-motions for partial summary judgment on the issue of the compensability of Plaintiffs' donning and doffing activities.  Plaintiffs argue that they are entitled to compensation because donning and doffing are integral and indispensable components of their principal law enforcement activities.  The City of Los Angeles, the defendant in all three cases, contends that it need not compensate Plaintiffs for such activities because (1) the LAPD does not

require its officers to don and doff at the workplace, (2) the FLSA's "changing clothes" exemption precludes Plaintiffs' claims, (3) the time Plaintiffs spend donning and doffing is <u>de minimis</u>; and (4) Defendant has relied in good faith on an opinion letter issued by the U.S. Department of Labor ("DOL") in 1985 advising Defendant that it need not compensate LAPD officers for donning and doffing activities.

After reviewing the parties' arguments and evidence and the relevant jurisprudence in this area, the Court concludes that Plaintiffs' donning and doffing activities are compensable under the FLSA as a matter of law.  The Ninth Circuit has already held that the donning and doffing of specialized protective equipment such as body armor and police equipment belts is compensable under the FLSA.  Although the district courts in the Ninth Circuit have split on the issue whether the donning and doffing of police uniforms are compensable activities, this Court concludes that those activities are compensable because, as explained below, police uniforms convey and legitimize officers' authority, increase officer safety, and help deter crime.  Moreover, donning and doffing activities need not occur at the workplace to be compensable. Otherwise, employers could effectively insulate themselves from having to compensate such activities simply by permitting their employees to don and doff at home.  Because none of Defendant's asserted defenses create any genuine issues of material fact, Plaintiffs are entitled to judgment as a matter of law.  However, because the applicable collective bargaining agreement already provides Plaintiffs with a yearly stipend that is intended to cover the costs associated with cleaning and maintaining their equipment, Defendant is entitled to summary adjudication of that specific aspect of Plaintiffs' claim.  Accordingly, the parties' cross-motions for partial summary judgment are **GRANTED IN PART** and **DENIED IN PART**.  The Court explains its reasoning in greater detail below.

## II.  BACKGROUND

The Manual of the Los Angeles Police Department ("LAPD Manual") sets forth, among other things, the organization and functions of the LAPD and the rules and procedures by which all LAPD officers must abide, including policies concerning officers' uniforms, safety equipment, and general appearance.  The basic uniform of LAPD officers eligible for field duty consists of a cap, a shirt, a badge, a tie, rain clothing, trousers, a police equipment belt (a/k/a Sam Browne belt), a trousers belt, shoes or boots, and socks.  (Caballero Decl., Ex. 1 [LAPD Manual §§ 614.10–.95] at 9–10.)  Officers have the option of wearing a short-sleeve shirt with a convertible collar in lieu of a long sleeve shirt and tie.  (Id. [§ 615.10] at 10.)  As of March 2007, all officers on field duty are also required to wear Kevlar body armor.  (Maislin Decl. ¶ 10, Ex. 3 [Special Order No. 5].)  Field officers are also required to carry with them certain equipment while on field duty, including a baton, a hobble restraint device, a general duty helmet, a traffic citation book, a flashlight, a field notebook, a pencil, a street guide book, a handcuff key, a whistle, a chemical irritant control device (i.e., pepper spray), handcuffs and a handcuff case, a firearm, and extra ammunition.  (Caballero Decl., Ex. 1 [LAPD Manual §§ 610.10–.11, 621.10, 622.05–.80] at 11.)  Finally, all LAPD officers must wear appropriate department emblems and insignia on their uniforms.  (Id. [§§ 632.10–635.70] at 13–14.)

The LAPD requires its officers to "possess at all times a serviceable uniform and the necessary equipment to perform uniformed field duty," and to maintain their uniforms in a "clean, serviceable condition."  (Id. [§§ 601.10, 602.10] at 3.)  Officers must also keep their leather equipment dyed and shined, and obtain replacement gear when the leather becomes cracked or worn.  (Id. [§ 602.20] at 3.)  Similarly, officers are required to keep their firearms clean and serviceable.  (Id. [§ 610.40] at 8.)  Although officers are generally responsible for cleaning and maintaining their own uniforms and equipment, officers with the rank of lieutenant and lower are given an annual Uniform, Maintenance and Equipment Allowance to cover expenses for

1   replacement uniforms, equipment maintenance, "and other professional expenses."

2   (Maislin Decl., Ex. 7 [Memoranda of Understanding ("MOUs") art. 3.2] at 87, 91, 95.)

3   Some officers maintain their uniforms and equipment themselves, while others utilize

4   professional services.  (Maislin Decl. ¶¶ 31–32; Becker Decl. ¶¶ 28–29; Bass-Otis

5   Decl. ¶¶ 27–28.)

6          Uniform and equipment inspections may be ordered at any time by the Chief

7   of Police or a designee, and inspections are required in conjunction with annual

8   performance evaluations.  (Caballero Decl., Ex. 1 [LAPD Manual § 660.10] at 15.)

9   Watch commanders must conduct daily inspections of officers' uniforms and

10  equipment.  (Id. [§§ 222.35, 225.40] at 2, [§ 660.40] at 16; see also Caballero Decl.,

11  Ex. 9 [Miyazaki Depo. Tr.] at 129–31, Ex. 10 [Chow Depo. Tr.] at 139–41, Ex. 17

12  [Barclay Decl. ¶ 6] at 190; Caballero Supp. Decl., Ex. 55 [King Test. Tr.] at 416.)[1]

13  These inspections are intended to ensure that officers wear proper uniforms and

14  adequately maintain their safety equipment.  (Def.'s Statement of Genuine Issues

15  ("SGI") ¶ 8.)  Failure to abide by the LAPD's uniform and equipment policies may

16  result in the imposition of disciplinary proceedings.  (Caballero Decl., Ex. 1 [LAPD

17  Manual § 660.30] at 16.)

18         The LAPD does not require its officers to don or doff their equipment or

19  uniforms at work.  (See id. [§ 606.15] at 5; Maislin Decl. ¶ 12; Becker Decl. ¶ 8;

20  Bass-Otis Decl. ¶ 8; cf. Maislin 8/11/2008 Decl., Ex. A [2000 MOU art. 4.3(A), at 25],

21  Ex. B [2003 MOU art. 4.3(A), at 34], Ex. C [2006 MOU art. 4.3(A), at 35].)

22  Nevertheless, the overwhelming majority of LAPD officers don and doff at work.

23  (Caballero Decl., Ex. 11 [Garner Depo. Tr.] at 152.)[2]  Officers who don and doff at

24  work change in locker rooms that the LAPD provides in most, but not all, of its

25  _____

26  [1]All references to trial testimony in this Order refer to the witness examinations that took place
    in Maciel v. City of Los Angeles, 569 F. Supp. 2d 1038 (C.D. Cal. 2008).

27  [2]During his deposition, Kenneth Garner, an LAPD Rule 30(b)(6) designee, testified that
28  "probably" 90% to 95% of patrol officers don and doff at their respective stations. (See Caballero
    Decl., Ex. 11 [Garner Depo. Tr.] at 152.)

1  stations.  (Def.'s Reply to Pls.' Resp. (Docket No. 678) ¶ 64.)[3]  Roll call signals the

2  beginning of the workday for field officers, and all officers assigned to uniformed duty

3  must report to roll call in proper attire and with the equipment necessary for their

4  respective assignments.  (Caballero Decl., Ex. 1 [LAPD Manual §§ 222.30–.35] at 2.)

5  Officers must wear their prescribed uniforms and equipment throughout their

6  respective tours of duty.  (Id. [§ 606.10] at 5.)

7          In general, officers may not wear their uniforms and personal equipment while

8  off duty without prior approval, but may wear their uniforms and equipment while they

9  commute to and from work.  (Id. [§ 606.15] at 5.)  Some officers who commute in their

10  personal vehicles cover up their uniforms while commuting for personal safety

11  reasons, and because uniformed officers must respond to citizens in need, even while

12  off-duty, if they are in uniform.  (Caballero Decl., Ex. 11 [Garner Depo. Tr.] at 153, Ex.

13  13 [Maciel Depo. Tr.] at 175–76; Sheldon Decl., Ex. 13 [Paulson Test. Tr.] at 231.)

14  Since November 2006, the LAPD has provided fare exemptions to officers who

15  commute to and from work in full uniform using public transportation.  (Maislin Decl.,

16  Ex. 5 [Notice 1.2].)

17          Plaintiffs' employment as LAPD officers is governed by a Memorandum of

18  Understanding ("MOU"), a collective bargaining agreement entered into by Plaintiffs'

19  union, the Los Angeles Police Protective League ("LAPPL"), and the LAPD every

20  three years.  None of the MOUs at issue in this case (the 2000–2003 MOU, the

21  2003–2006 MOU, and the 2006–2009 MOU) provide for compensation for the time

22  Plaintiffs spend donning and doffing their police uniforms and equipment.  In fact, the

23  LAPD has never compensated its officers for donning and doffing activities, although

24  doffing that occurs while officers are still "on the clock," such as when a shift ends

25  early, is compensated.  (Pls.' Resp. to Def.'s Statement of Uncontroverted Facts

26  ("SUF") (Docket No. 675) ¶¶ 96–97.)

27

28  [3]Unless otherwise noted, all references to docket numbers refer to entries recorded in Nolan et al. v. City of Los Angeles et al., CV 03-02190 GAF (AJWx).

1    In 1985, after the Supreme Court decided <u>Garcia v. San Antonio Metro.</u>

2    <u>Transit Auth.</u>, 469 U.S. 528 (1985), which made the FLSA applicable to the states,

3    Defendant submitted various questions to the DOL to seek clarification regarding the

4    FLSA.  (<u>See</u> Maislin Decl., Ex. 8 at 97.)  Among those questions was whether

5    "changing time" is compensable under the FLSA.  (<u>Id.</u> at 114.)  In its response, the

6    DOL stated that LAPD officers' "clothes changing time is not compensable under the

7    FLSA" because the MOU submitted to the DOL did not contain an express provision

8    regarding compensability of donning and doffing, and because there was no custom

9    or practice between the parties to consider these activities compensable.  (Maislin

10   Decl., Ex. 9 at 193.)  Defendant and the LAPD continue to rely on the DOL's response

11   as support for their position that LAPD officers are not entitled to compensation for

12   donning and doffing their uniforms and safety equipment.

## III.  DISCUSSION

### A. Summary Judgment Legal Standard

15   A party may move for summary judgment "on all or part of [a] claim."  Fed. R.

16   Civ. P. 56(a).  On a motion for summary judgment, a court must presume that the

17   nonmovant's evidence is true, and draw all justifiable inferences in the nonmovant's

18   favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986) (citing <u>Adickes v.</u>

19   <u>S.H. Kress & Co.</u>, 398 U.S. 144, 158–59 (1970)).  Summary judgment is appropriate

20   where "the pleadings, the discovery and disclosure materials on file, and any affidavits

21   show that there is no genuine issue as to any material fact and that the movant is

22   entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  There is no genuine

23   issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact

24   to find for the nonmoving party."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>,

25   475 U.S. 574, 587 (1986).  A fact is material if it "might affect the outcome of the suit

26   under the governing law."  <u>Liberty Lobby</u>, 477 U.S. at 248.  The moving party bears

27   the burden of demonstrating the absence of genuine issues of material fact.  <u>Id.</u> at

28   256.  Once the moving party has carried its burden, the burden shifts to the

nonmoving party to set forth specific facts showing that there is a genuine issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Fed. R. Civ. P. 56(e)(2).

**B. ISSUE PRECLUSION & RES JUDICATA**

Both sides of this dispute request that the Court deem the litigation of certain issues to be foreclosed under the doctrine of issue preclusion.  Plaintiffs invoke issue preclusion with respect to every issue that they claim was resolved in their favor in Maciel v. City of Los Angeles, 569 F. Supp. 2d 1038 (C.D. Cal. 2008), including: (1) whether donning and doffing of safety equipment is an integral and indispensable part of LAPD officers' principal activities; (2) whether LAPD officers are required to don and doff their safety equipment at work; (3) whether LAPD officers' equipment falls within the "changing clothes" exemption under section 3(o) of the FLSA; (4) whether the time LAPD officers spend donning and doffing safety equipment is de minimis; and (5) whether Defendant may invoke the good faith defense set forth in section 9 of the Portal-to-Portal Act.  Defendant, on the other hand, seeks to invoke issue preclusion to prevent litigation of the issue whether Plaintiffs are entitled to compensation for time spent donning and doffing their police uniforms, which it contends the Maciel court resolved in Defendant's favor.  Defendant also requests that the Court preclude litigation of the question whether officers' acts of cleaning and maintaining their equipment are compensable, activities Maciel deemed to be covered by the Uniform, Maintenance and Equipment Allowance.

The preclusive effect of federal courts' judgments is a matter of federal law. Tahoe Sierra Preserv. Council, Inc. v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1077 n.10 (9th Cir. 2003) (citing W. Sys., Inc. v. Ulloa, 958 F.2d 864, 871 n.11 (9th Cir. 1992)).  The dual purpose of issue preclusion is to protect litigants from the burden of relitigating identical issues with a party or privy thereof, and to promote judicial economy by preventing needless litigation.  Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979).  To invoke issue preclusion, a party must prove that (1) the party against whom the doctrine is invoked had a full and fair opportunity to litigate the

identical issue in the prior action; (2) the issue was actually litigated in the prior action and necessary to support the judgments; (3) the issue was decided in a final judgment; and (4) the party against whom the doctrine is asserted was a party, or in privity with a party, to the prior action.  <u>Syverson v. Int'l Bus. Machs. Corp.</u>, 472 F.3d 1072, 1078 (9th Cir. 2007); <u>Resolution Trust Corp. v. Keating</u>, 186 F.3d 1110, 1114 (9th Cir. 1999).  Although district courts have broad discretion to determine when issue preclusion may be invoked offensively, the Supreme Court has cautioned that the application of offensive nonmutual issue preclusion should not be permitted where the plaintiff could easily have joined in the earlier action or application of the doctrine would prejudice the defendant.  <u>Parklane Hosiery</u>, 439 U.S. at 651–52.  Regardless of the type of issue preclusion invoked, a party asserting the doctrine must prove that the determination of the issue in the prior litigation was "a critical and necessary part of the judgment in [that] action."  <u>Littlejohn v. United States</u>, 321 F.3d 915, 923 (9th Cir. 2003).

During the March 30, 2009 hearing regarding the present motions, the Court tentatively ruled that the doctrine of issue preclusion does not preclude the Court from adjudicating any of the issues before it.  The Court hereby affirms its tentative ruling, except as to Edward Maciel, Jr. himself, who is now a plaintiff in the <u>Alaniz</u> action. (<u>See</u> <u>Alaniz et al. v. City of Los Angeles et al.</u>, CV 04-08592 GAF (JWJx), 3/29/2007 Consent to Join Action as a Party (Docket No. 1281).)

<u>Maciel</u> does not have preclusive effect on Plaintiffs' donning and doffing issue because the Court decided the case on a basis that rendered the issue moot.   569 F. Supp. 2d at 1055–56.  After summarizing its findings regarding the plaintiff's donning and doffing claim, the court wrote: "***Notwithstanding the above findings***, the Court rules that Plaintiff has failed to prove any violation of the FLSA because Plaintiff failed to put forth sufficient evidence demonstrating that he worked above the 171 hours per deployment period threshold.  Therefore, the Court finds in favor of Defendant on this claim."  <u>Id.</u> at 1056 (emphasis added).  For this reasons, any observations that the trial

court may have made regarding the donning and doffing issues was not essential to its determination of Plaintiff's claim – the Maciel court could have reached the same conclusion without making any findings specifically regarding Maciel's donning and doffing activities.  In other words, to issue its ruling, the court did not need to reach any conclusions regarding donning and doffing activities.  This is true also with regard to the court's ruling, on summary judgment, that section 3(o) precluded Maciel's donning and doffing claim, because the ruling had no effect on the Court's ultimate decision at trial.  Accordingly, because the court's findings relating to donning and doffing were not necessary to support the court's judgment, issue preclusion does not apply and the Court may consider the issue anew in this case.          It is clear, however, that Maciel has already had a full and fair opportunity to litigate his FLSA overtime claim against Defendant, which he lost.  Maciel may not now attempt to take another bite of the proverbial apple as a plaintiff in the Alaniz lawsuit.  Accordingly, Maciel's FLSA overtime claim against Defendant is hereby **DISMISSED WITH PREJUDICE** under the doctrine of res judicata.[4]

---

[4]Defendant fails to meet its burden of establishing privity between Maciel and the remaining Plaintiffs in the three consolidated actions before the Court.  Although the Court is cognizant that privity may exist "where the interests of the nonparty and party are so closely aligned as to be virtually representative," In re Schimmels, 127 F.3d 875, 881 (9th Cir. 1997) (internal quotation marks omitted), Defendant does not even attempt to explain in its papers why such a standard might be met under present circumstances.

**C. COMPENSABILITY OF DONNING & DOFFING POLICE UNIFORMS & EQUIPMENT[5]**

The primary issue presented by the parties' cross-motions for partial summary judgment is whether Plaintiffs' acts of donning and doffing their uniforms and protective equipment constitute an integral and indispensable part of their principal activities.

**1. LEGAL FRAMEWORK UNDER THE FLSA & THE PORTAL-TO-PORTAL ACT**

The FLSA provides that employers must pay their employees for all hours worked. 29 U.S.C. §§ 206–207; Alvarez v. IBP, Inc., 339 F.3d 894, 902 (9th Cir. 2003) ("Alvarez I"). The Supreme Court has defined "work" as "'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer.'" Id. (quoting Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 598 (1944)); see also Armour & Co. v. Wantock, 323 U.S. 126, 132–33 (1944) (extending the definition of "work" to non-exertional activities). Whether an activity falls within the FLSA's definition of "work" is "a mixed question of law and fact. The nature of the employees' duties is a question of fact, and the application of the FLSA to those duties is a question of law." Ballaris v. Wacker Siltronic Corp., 370 F.3d 901, 910 (9th Cir. 2004).

In 1947, Congress enacted the Portal-to-Portal Act, which restricts the FLSA's definition of "work" by providing that activities that are preliminary or postliminary to an employee's principal activities, or which occur before or after the employee's workday, are not compensable. 29 U.S.C. § 254(a). The Supreme Court has defined the term "principal activity or activities" as those activities that "are an 'integral and

_____

[5]The Court rejects Defendant's contention that Plaintiffs are attempting to "bootstrap" a donning and doffing theory into the Nolan and Alaniz actions—a theory that does not appear in either of the complaints in those cases. It is clear that the plaintiffs in Nolan and Alaniz are suing Defendant for overtime violations. It is equally clear that there is no separate cause of action for donning and doffing violations under the FLSA. Thus, the absence of allegations specifically regarding donning and doffing activities in the Nolan and Alaniz complaints does not preclude the plaintiffs in those actions from now seeking overtime compensation for such activities. This conclusion is supported by the fact that Defendant is well aware by this juncture of Plaintiffs' assertion of the donning and doffing theory, and thus cannot be prejudiced by the lack of any mention of that theory in the Nolan and Alaniz complaints.

indispensable part of the principal activities'" in which the employee is engaged.  IBP, Inc. v. Alvarez, 546 U.S. 21, 29–30 (2005) ("Alvarez II") (quoting Steiner v. Mitchell, 350 U.S. 247, 252–53 (1956)).  In other words, "preliminary and postliminary activities remain compensable so long as 'those activities are an integral and indispensable part of the principal activities.'"  Ballaris, 370 F.3d at 910 (quoting Mitchell v. King Packing Co., 350 U.S. 260, 262–63 (1956)); accord Alvarez I, 339 F.3d at 903; 29 C.F.R. § 553.221(b).  Thus, "while the Portal-to-Portal Act exclude[s] ordinary clothes-changing from compensable time, other clothes-changing that [is] not merely a convenience to the employee and that [is] directly related to the specific work remain[s] compensable."  Ballaris, 370 F.3d at 910 (internal quotation marks omitted); see also 29 C.F.R. § 790.8 n.65 (stating that the changing of clothes may be compensable under the FLSA where it "is required by law, by rules of the employer, or by the nature of the work").

Additional considerations may compel a finding of noncompensability even where the plaintiff can establish that the activity in question is an integral and indispensable part of her principal activities.  For example, section 3(o) of the FLSA provides that, in determining the number of hours worked by an employee, "there shall be excluded any time spent in *changing clothes* or washing at the beginning or end of each workday which was excluded from measured working time . . . by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee."  29 U.S.C. § 203(o) (emphasis added).  Moreover, donning and doffing activities are not compensable where the time required therefor is de minimis.  Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 692 (1946), superseded by statute on other grounds as stated in Carter v. Panama Canal Co., 463 F.2d 1289, 1292–93 (D.C. Cir. 1972); Lindow v. United States, 738 F.2d 1057, 1062 (9th Cir. 1984); see also Reich v. IBP, Inc., 38 F.3d 1123, 1126 n.1 (10th Cir. 1994).  Finally, good faith reliance on a DOL regulation, order, ruling, or interpretation absolves employers of liability under the FLSA for wage violations.  29

11

U.S.C. § 259.

A number of courts have addressed the issue of compensation under the FLSA for time spent donning and doffing uniforms and protective equipment.  A brief summary of the most pertinent cases provides context for the Court's discussion of the issues raised by the parties.

In <u>Steiner</u>, the Supreme Court addressed the question whether battery-plant employees' acts of changing into work clothes at the beginning of shifts and showering at the end of shifts constituted preliminary or postliminary activities under the Portal-to-Portal Act.  350 U.S. at 248.  The defendant employer was a manufacturer of "automotive-type wet storage batteries."  <u>Id.</u> at 249.  To manufacture these batteries, the plaintiffs had to mix a number of dangerous chemicals, including lead, which created a risk of serious injury to the plaintiffs.  <u>Id.</u>  Thus, the custom and practice in the industry was to change clothes and shower at the end of the workday, and battery plants were required by law to provide facilities for that purpose.  <u>Id.</u> at 250.  Specifically, the defendant employer had equipped its facility with showers and a locker room, and provided old clothing free of charge that its employees could wear while they worked.  <u>Id.</u> at 251.  The testimony of witnesses established that the employees were required to shower for their own protection, as well as for the protection of the company.  <u>Id.</u> at 251.

After evaluating the legislative history of the Portal-to-Portal Act, the Supreme Court held that the employees were entitled to compensation for changing their clothes and showering: "activities performed either before or after the regular work shift, on or off the production line, are compensable under the portal-to-portal provisions of the [FLSA] if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by Section 4(a)(1) [of the Portal-to-Portal Act]."  <u>Id.</u> at 256.  In view of the dangers the employees faced in the battery plant, the Court reasoned that "it would be difficult to conjure up an instance where changing clothes and showering are more

clearly an integral and indispensable part of the principal activity of the employment than in the case of these employees." Id.

A more recent case, Alvarez I, involved a lawsuit under the FLSA initiated by production-line employees at a meat production plant that was engaged in the slaughtering and processing of animal carcasses.  339 F.3d at 898.  At the start of each shift, the plaintiffs were required to "gather their assigned equipment, don that equipment in one of the . . . plant's four locker rooms, and prepare work-related tools." Id.  At the end of each shift, the employees were required to "clean, restore, and replace their tools and equipment, storing all of it at the . . . plant itself."  Id.  The protective equipment the plaintiffs were required to wear included a sanitary outer garment that the defendant provided and washed each night, a plastic hard hat, a hair net, ear plugs, a face shield or safety goggles, gloves, and liquid-repelling sleeves, aprons, and leggings.  Id. at 898–99 n.2.  In addition, all employees had to wear safety boots or shoes, which had to be wiped or hosed down after each shift, and many employees opted to wear belts designed to prevent injury.  Id.  Those employees who used knives were also required to wear protective gear such as Kevlar gloves and mesh aprons, leggings, vests, and sleeves.  Id.

The plaintiffs filed suit under the FLSA, alleging that they were entitled to compensation for the time they spent donning and doffing their protective equipment. The Ninth Circuit agreed in part, holding that the plaintiffs' acts of donning and doffing protective equipment were compensable, but their "tasks of donning and doffing . . . non-unique protective gear such as hardhats and safety goggles [were] noncompensable as de minimis."  Id. at 904 (citing Lindow, 738 F.2d at 1061).  On the latter point, the Ninth Circuit agreed with a Tenth Circuit case which found that the time spent donning and doffing non-unique protective gear "is at once so insubstantial

1    and so difficult to monitor that it 'is <u>de minimis</u> as a matter of law.'"  <u>Id.</u> (quoting <u>Reich</u>,

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

38 F.3d at 1127).[6]

A year after deciding Alvarez I, the Ninth Circuit revisited the donning and doffing issue in Ballaris, 370 F.3d 901.  The defendant in Ballaris, a manufacturer of silicon wafers, required its employees to wear special protective gowns known as "bunny suits" before entering "cleanrooms" in which the wafers were manufactured. Id. at 903.  In some instances, employees were required to proceed through an "air shower" before exiting the cleanrooms.  Id. at 903–04.  In addition, the defendant required its employees to wear street clothes to work and to change into and out of their uniforms in locker rooms on the defendant's premises.  Id. at 904.  The defendant also monitored its employees to ensure that they did not leave the plant in their uniforms.  Id. at 904, 911.

The Ninth Circuit concluded that "because the plant uniforms were 'required by' the employer, and because the wearing of those uniforms was for the employer's benefit, the time spent putting them on and taking them off must be included as compensable time."  Id. at 911 (citing Alvarez I, 339 F.3d at 903).  Several factors "weigh[ed] heavily in favor of" the court's determination that wearing the uniforms was necessary to the principal work performed, including the requirement that plant uniforms be worn daily, the prohibition on leaving the plant in the uniforms, and the measures the defendant took to enforce these rules.  Id.  The court also emphasized the fact that the employees were required to don and doff their uniforms on the defendant's premises and reasoned that the activity of wearing the uniforms was performed for the benefit of the company because it prevented potential contamination of the cleanrooms, thereby helping to ensure a quality product and

---

[6]As discussed below, Alvarez I went up to the Supreme Court on the related issue "whether postdonning and predoffing walking time is specifically excluded by § 4(a)(1)" of the Portal-to-Portal Act, 29 U.S.C. § 254(a)(1).  Alvarez II, 546 U.S. at 30.  Although the Court did not specifically address the Ninth Circuit's holding regarding the compensability of donning and doffing protective equipment, it did expressly reiterate its Steiner holding.  Id. at 29–30.

1  keeping the company competitive, and because it "promote[d] a clean internal

2  philosophy . . . [and] attract[ed] favorable industry attention."  Id.

3           In Martin v. City of Richmond, 504 F. Supp. 2d 766 (N.D. Cal. 2007), the first

4  in a line of recent district court cases involving California police officers, an officer

5  employed by the City of Richmond brought suit under the FLSA, claiming that he was

6  entitled to compensation for time spent donning and doffing his uniform and safety

7  equipment.  Id. at 770.  The City of Richmond moved for partial summary judgment on

8  the issue, arguing that it was not required to compensate the plaintiff because it did

9  not require officers to don and doff at work.  Id.  In response, the plaintiff argued,

10 among other things, that the distinction between dressing at home and dressing at

11 work did not foreclose him from seeking compensation, and that, in any event, the

12 nature of his work prevented him from donning and doffing at home.  Id.

13          The court first addressed the question whether donning and doffing was

14 integral and indispensable to the plaintiff's principal activities.  With respect to the

15 plaintiff's uniform, the court answered the question in the negative, reasoning that "no

16 matter how helpful or socially significant a particular outfit might be to the performance

17 of an employee's duties, the law rejects the idea that donning and doffing of mere

18 clothes is enough to establish an employee's right to compensation under the FLSA."

19 Id. at 773–74.  The court explained:

20              A police officer's uniform, in and of itself, does not assist the officer
    in performing his duties. . . .  Aside from the authority they connote,
21   [officers'] items of clothing do not help catch suspects, and they do not
    protect officers from violence.  Something more than the salutary effect of
22   a uniform on those who recognize its cultural significance is necessary to
    make its donning and doffing "integral and indispensable" to an officer's
23   "principal activities" of law enforcement.  If the law were otherwise, ***all***
    uniforms would entitle their wearers to compensation under the FLSA.
24

25 Id. at 774.  Based on this reasoning, Martin held that the plaintiff was not entitled to

26 compensation for donning and doffing his police uniform as a matter of law.  Id. at

27 776–77.

28

However, the court reached a different conclusion with regard to the plaintiff's "duty equipment" (i.e., badge, handcuffs, baton, firearm, safety vests, etc.). Analogizing the "duty equipment" to the protective equipment worn by the meat plant workers in <u>Alvarez I</u> and the special work clothes worn by the battery plant workers in <u>Steiner</u>, the court concluded that the plaintiff's protective equipment was integral and indispensable to his principal activities of law enforcement because it permitted him to perform his duties safely.  <u>Id.</u>  In addition, the court reasoned that "[p]olice officers do not wear protective gear for personal comfort or convenience; they bear the 30-pound load because of the policy of their employer and the demands of their working environment."  <u>Id.</u> at 775.

The court then addressed whether the mere fact that the defendant did not require its officers to don and doff at work precluded the plaintiff from recovery.  The court accepted the DOL's position that donning and doffing is generally not compensable if the employee has the option of performing these tasks at home, but nevertheless concluded that "it is [not] clear in this case whether Richmond police officers actually have a meaningful opportunity to don their protective gear at home, or instead, whether that option is illusory."  <u>Id.</u>  The plaintiff had submitted evidence that donning and doffing at home jeopardized the safety of those around them and made the officers a target for retaliation and violence.  <u>Id.</u>  The court concluded that this evidence was sufficient to create a genuine issue of material fact as to whether the nature of the plaintiff's work as an officer prevents them from donning and doffing their protective gear at home, and refused to grant summary judgment "simply because Richmond police officers have the formal option of donning and doffing their protective gear at home."  <u>Id.</u> at 776.

Several months later, <u>Abbe v. City of San Diego</u>, No. 05cv1629 DMS (JMA), 2007 WL 4146696 (S.D. Cal. Nov. 9, 2007), was decided.  In <u>Abbe</u>, over 1,000 police officers (represented by, among others, Plaintiffs' counsel in the present actions) sued the City of San Diego, seeking compensation for time spent donning and doffing their

police uniform and safety equipment.  Id. at *1.  The parties filed cross-motions for partial summary judgment to summarily adjudicate the issue.  Id. at *2.  Like the plaintiffs in the present cases, the officers in Abbe contended that the act of donning and doffing their uniforms and gear was an integral and indispensable part of their principal activities because "the uniform *itself* is essential to the discharge of their law enforcement duties."  Id. at *3.  In other words, the plaintiffs' principal argument was that "the nature of the uniform itself is indispensable to discharging the principal functions of the job."  Id. at *7.  The City of San Diego conceded that the uniform and gear were "essential to the discharge of law enforcement duties," but argued that the plaintiffs were not entitled to compensation for those activities because they were not required to don and doff their uniforms at work.  Id. at *3.

The court began its analysis by describing the DOL's stance on the issue:

> The Department of Labor consistently has maintained that time spent donning and doffing a uniform or safety gear at home is not compensable work under the FLSA because such activity is not part of the continuous workday and is not integral and indispensable to the principal activities of the employee.  On the other hand, when the employer or the nature of the work mandates that such activity take place at work, it is compensable.

Id. at *5.  The court then cited a number of district court cases that had determined that employees (including police officers and security guards) are not entitled to compensation for changing clothes so long as they are not required to do so at the workplace by law, the employer's policies, or the nature of the work.  Id. (citing Martin, 504 F. Supp. 2d at 773–74; Lee v. Am-Pro Protective Agency, Inc., 860 F. Supp. 325, 326 (E.D. Va. 1994); Bagrowski v. Maryland Port Auth., 845 F. Supp. 1116, 1121 n.6 (D. Md. 1994); Apperson v. Exxon Corp., No. S-78-192, 1979 WL 1979, at *8 (E.D. Cal. Feb. 7, 1979); Baylor v. United States, 198 Ct. Cl. 331, 337 (1972)).  Based on this precedent, the court concluded that "if donning and doffing a uniform at work is required by law, employer policy or the nature of the job, the time spent performing

such activity is compensable as it is necessarily part of the continuous workday and integral and indispensable to the employee's principal activities." Id. at *6.

After concluding that neither state law nor workplace policy prevented the officers from dressing away from the workplace, the court addressed whether the nature of the plaintiffs' work required officers to don and doff their uniforms at work. The plaintiffs contended that donning and doffing at home created safety concerns for family members, made officers targets, and was inconvenient. Id. The court held that the evidence submitted by the plaintiffs in support of their arguments failed to create a triable issue of fact. Id. at *6–7. The Court reasoned that the City of San Diego's policy requiring officers to cover their uniforms while off-duty sufficiently addressed the plaintiffs' concerns for their personal safety, and that the plaintiffs had failed to provide evidence "concerning actual harm to others or that they are unable to lock or otherwise safely store their weapons at home." Id. at *7. The court also noted that the mere inconvenience associated with donning and doffing at home is not a sufficient basis for compensation. Id. The court explained:

> the relevant inquiry is not whether the uniform itself or the safety gear itself is indispensable to the job—they most certainly are—but rather, the relevant inquiry is whether the nature of the work requires the donning and doffing process to be done on the employer's premises. . . .
>
> Here, in contrast to the donning and doffing activities in Steiner, Alvarez, and Ballaris, there is nothing about the process of donning and doffing a [police] uniform [and protective gear] that must be done at work in order for an officer to safely and effectively carry out his or her law enforcement duties. Since the Court has been directed to no evidence suggesting Plaintiffs are required by law, policy, or the nature of their work to don and doff their uniform or safety equipment at work, Defendant is entitled to judgment on grounds that donning and doffing the uniform in question is not integral and indispensable to the principal activities of employment.

Id. Accordingly, the court granted summary judgment in favor of the City of San Diego on the issue, specifically distinguishing its holding from Martin on the ground that the

plaintiffs' evidence in <u>Abbe</u> was simply too "general and speculative" to satisfy the plaintiffs' burden on summary judgment.[7]  <u>Id.</u> at *7 n.4.

Like the cases before it, <u>Lemmon v. City of San Leandro</u>, 538 F. Supp. 2d 1200 (N.D. Cal. 2007), involved police officers who claimed that they were entitled to compensation under the FLSA for donning and doffing their police uniforms and safety equipment.  <u>Id.</u> at 1201–02.  Unlike <u>Martin</u> and <u>Abbe</u>, however, which it expressly rejected, <u>Lemmon</u> held that police officers **are** entitled to compensation for donning and doffing activities under the FLSA.  <u>Id.</u> at 1209.  First, the court found that donning and doffing were necessary to the principal work performed because "[a] patrol officer cannot effectively do her job without her uniform."  <u>Id.</u> at 1205.  More specifically, the court explained that police uniforms convey authority and foster officers' "command presence," which "is the first of many points along the continuum that police officers regularly use to enforce the law and obtain compliance from members of the public." <u>Id.</u> at 1204.  In addition, the court treated the officers' uniforms as constituting "'specialized clothing' that forms part of the continuum of force designed to protect against rogue elements and to inform the citizenry of the legitimacy of the officer's official position."  <u>Id.</u> at 1206.  Concluding that "police uniforms are special because the uniform itself forms part of the equipment," the court refused to separate the plaintiffs' uniform from their protective equipment, instead viewing "the police uniform with all its component parts . . . as an integrated whole that serves as an officer's survival suit."  <u>Id.</u> at 1205.

The court also addressed the defendant's argument that the absence of a requirement mandating the plaintiffs to don and doff at work exempted the defendant from having to compensate those activities.  The court concluded that "there is no explicit requirement in the Ninth Circuit that the preliminary or postliminary activity

---

[7]As an alternative ground, the court held that the plaintiffs were not entitled to compensation because time spent changing clothes was excluded from compensation under the FLSA "changing clothes" exemption, 29 U.S.C. § 203(o).  <u>Abbe</u>, 2007 WL 4146696, at *8.

take place on the employer's premises," and refused to inject such a requirement into the analysis. Id. at 1206. Therefore, on this point, the court expressly disagreed with Abbe. Id. at 1207.

Finally, the court held that the donning and doffing of the police uniform and specialized protective equipment benefitted the defendant because, among other things, it minimized the potential for injury to officers, thereby fostering "a ready and healthy police force" and increasing officers' efficiency. Id. at 1208. Moreover, the court reasoned that the very provision of lockers to the officers underscored the benefits to the defendant, because it facilitated the "vast majority of patrol officers [who] at least partially don and doff at the police station, thus avoiding an array of problems associated with donning and doffing off-site." Id. Notably, the court expressly rejected the notion that donning and doffing at work helped avoid crime on off-duty uniformed officers and back injuries, facilitated the mental preparation of officers, and reduced the risk of harm to family members. Id. at 1208–09. Nevertheless, finding enough evidence of benefit to the defendant, the court concluded that both prongs of the Alvarez I test were met, and granted summary judgment in favor of the plaintiffs. Id. at 1209.

Lastly, in Maciel v. City of Los Angeles, 569 F. Supp. 2d 1038 (C.D. Cal. 2008), LAPD officer Edward Maciel, who, as explained above, is also a plaintiff in the Alaniz case presently before the Court, sued the City of Los Angeles to recover, among other things, overtime compensation for donning and doffing activities. On summary judgment, the court concluded that the "changing clothes" exemption of section 3(o) of the FLSA, 29 U.S.C. § 203(o), precluded the compensability of time spent donning and doffing the police uniform. (See Maciel v. City of Los Angeles, CV 06-00289 RSWL (CWx), 9/27/2007 Order (Docket No. 172) at 10–12.) After a seven-day bench trial, however, the court held that "donning and doffing is not a preliminary or postliminary activity under the Portal to Portal Act of 1947," reasoning that the donning and doffing of protective gear is done for the benefit of the LAPD because it

"allow[s] the LAPD to ensure that officers are kept safe, and, allow[s] the officers to complete their principal duty of enforcing the laws of the land." Id. at 1049.  The court also found compelling the requirement that officers wear their safety equipment while on duty, and the possibility of discipline for failing to do so.  Id.  The court then concluded that the changing clothes exemption does not extend to specialized protective equipment such as body armor and Sam Browne belts.  Id. at 1049–50.  The Court also found that the Uniform, Maintenance and Equipment Allowance in the MOUs adequately compensates LAPD officers for time spent cleaning and maintaining their safety gear.  In addition, the court rejected the notion that the five-to-ten minutes Maciel spent each workday donning and doffing his safety equipment was de minimis.  Id. at 1050–52.  Ultimately, however, the court refused to enter judgment in Maciel's favor regarding the donning and doffing of specialized protective equipment because Maciel had failed to demonstrate that he had worked more than 171 hours per deployment period during the relevant time period.  Id. at 1056.

## 2. APPLICATION

The primary issue on the present cross-motions is whether the donning and doffing of police uniforms and protective equipment are compensable activities under the FLSA and section 4 of the Portal-to-Portal Act.  Plaintiffs argue that the acts of donning and doffing police uniforms and protective gear, including the Kevlar body armor and Sam Browne belts, constitute an integral and indispensable part of their principal activities and are therefore compensable under the FLSA.  Defendant counters that donning and doffing cannot be an integral and indispensable part of Plaintiffs' principal activities because Plaintiffs are not required to don and doff at work.  Defendant also contends that, even if donning and doffing are integral and indispensable activities, Plaintiffs' claims are precluded by the "changing clothes" exemption of the FLSA because the LAPD has never compensated its employees for time spent donning and doffing.  Additionally, Defendant argues that Plaintiffs are foreclosed from recovery because they seek compensation for activities that are de

1  minimis as a matter of law, and because Defendant's policy of not compensating its

2  employees for such activities is based on its good faith reliance on a 1985 DOL letter,

3  which advised the LAPD that such activities are not compensable under the FLSA.

4  The Court addresses each of these arguments in turn.

5  **a. Integral & Indispensable Part of Officers' Principal Activities**

6  Binding precedent establishes that donning and doffing specialized safety

7  equipment, such as Kevlar body armor and Sam Browne belts, are compensable

8  activities under the FLSA.  See Steiner, 350 U.S. at 256; Ballaris, 370 F.3d at 911;

9  Alvarez I, 339 F.3d at 903.  Thus, the first issue the Court must resolve is whether the

10  activities of donning and doffing police uniforms are an integral and indispensable part

11  of LAPD officers' law enforcement duties.  An activity is "integral and indispensable" if

12  it is "necessary to the principal work performed and done for the benefit of the

13  employer."  Alvarez I, 339 F.3d at 903.

14  **i. Necessary to the Principal Work Performed**

15  After carefully reviewing the parties arguments, the Court concludes that the

16  donning and doffing of police uniforms is necessary to the principal work performed by

17  police officers.  In reaching this holding, the Court finds the reasoning of Lemmon

18  more persuasive that analysis set forth in Martin and Abbe.  The evidence presented

19  in this case, which notably includes the LAPD Manual's detailed requirements

20  addressing the uniform and its appearance, establishes beyond reasonable debate

21  the significance of police uniforms and their effect on the general public.  Unlike the

22  attire of, say, a UPS driver or a Southern California Edison repairman, police uniforms

23  are not merely a means of identification; rather, police uniforms help convey and

24  legitimize police officers' authority, enhance officers' ability to assert control over

25  situations necessitating police involvement, increase officer safety, and deter crime.

26  (See Caballero Decl., Ex. 11 [Garner Depo. Tr.] at 148–50, Ex. 12 [Perez Depo. Tr.] at

27  158–59.)  Even the United States Supreme Court has acknowledged "the aura of

28  authority surrounding an armed, uniformed officer."  Berkemer v. McCarty, 468 U.S.

420, 438 (1984).  Although Defendant seeks to minimize the significance of police uniforms for purposes of this litigation, it presents no evidence to support its position. (See Def.'s SGI (Docket No. 668) ¶ 18.)

A number of California statutes reflect the notion that a police uniform conveys officers' authority and can influence and control citizens' behavior.  For instance, California law obligates peace officers to display their badges while actively engaged in their law enforcement duties, Cal. Penal Code § 830.10, and prohibits peace officers from using "for private gain or advantage . . . the badge, uniform, prestige, or influence of [their] local agency office or employment," Cal. Gov't Code § 1126. Section 1126 has been interpreted as precluding police officers from wearing their official uniforms in private employment without prior authorization.  See Melendez v. City of Los Angeles, 73 Cal. Rptr. 2d 469, 476 (Ct. App. 1998) (citing 65 Ops. Cal. Att'y Gen. 80, 83 (1985)).  A police officer may, however, exercise "the powers of a peace officer" while employed as a private security guard or patrolman for a public or private entity while off duty so long as the officer is wearing a police uniform.  Cal. Penal Code § 70.  A more pointed example is the rule that a suspect may not be prosecuted for evading a pursuing peace officer while operating a motor vehicle unless the officer is, among other things, "wearing a distinctive uniform."  Cal. Veh. Code § 2800.1(a)(4).  Perhaps the most substantial recognition of the significance and impact of a police uniform is the California Legislature's prohibition of the impersonation of peace officers:

> Any person other than one who by law is given the authority of a peace officer, who willfully wears, exhibits, or uses the authorized uniform, insignia, emblem, device, label, certificate, card, or writing, of a peace officer, with the intent of fraudulently impersonating a peace officer, or of fraudulently inducing the belief that he or she is a peace officer, is guilty of a misdemeanor.

Cal. Penal Code § 538d;[8] see also Cal. Penal Code § 146a.  Section 538d implicitly

---

[8]In 1998, the California Legislature amended section 538d to bring police uniforms within the statute's scope.  The author of the bill explained that the amendment was necessary because

recognizes that the average citizen responds much differently when the person issuing commands or pointing a firearm is someone clothed in a police uniform as opposed to plain clothes.

In short, Defendant cannot reasonably contend that LAPD officers' uniforms do not convey and legitimize their lawful authority. A police uniform, with all of its various components, constitutes much more than mere attire and is essential to an officers' performance of her duties. Nevertheless, the question remains whether the Court is precluded from finding that donning and doffing activities are integral and indispensable parts of LAPD officers' principal activities because the LAPD does not require its officers to don and doff at work. In other words, does the compensability of donning and doffing activities depend upon the location at which such activities may occur?

As explained in detail above, case law has provided varying answers to the question whether donning and doffing must take place at the workplace to be compensable. Abbe adopted the DOL's position on the issue and held that donning and doffing activities are compensable only if they must occur at the workplace. 2007 WL 4146696 at *7. Abbe's rationale was partly based on a recognition that it may be difficult to square the "continuous workday" rule with a rule that requires compensation for donning and doffing activities that take place away from the workplace. Id. at *5. Lemmon, on the other hand, expressly disagreed with Abbe's holding and concluded that donning and doffing activities are compensable regardless of whether they must occur at the workplace. 538 F. Supp. 2d at 1208.

Absent any mandatory authority requiring donning and doffing activities to occur at the workplace to be compensable, the Court is free to weigh the parties'

---

"[p]olice uniforms are manifestly susceptible to abuse by criminals." California Assembly Comm. on Pub. Safety, Policy Comm. Analysis, S.B. 1390 (1998). The Los Angeles County Sheriff's Department, one of the organizations that supported the bill, argued that the bill was necessary because "[u]niforms worn by peace officers are easily recognizable by the public and misuse of such uniforms can easily lead to illegal acts perpetrated under the facade of public safety." Id.

arguments and evidence to reach a logical conclusion regarding the issue.  As explained below, the Court largely agrees with the conclusions reached by <u>Lemmon</u> and <u>Maciel</u>, and disagrees with <u>Abbe</u>'s holding and the DOL's position, on the question whether donning and doffing activities must take place at work to be compensable.

First, there is no principled reason for imposing a location requirement on the compensability of donning and doffing activities, and neither <u>Abbe</u> nor the DOL Regulations provide one.  In fact, the DOL's regulations regarding the overtime compensation rules governing public law enforcement officers expressly recognize that "[t]ime spent away from the employer's premises under conditions that are so circumscribed that they restrict the employee from effectively using the time for personal pursuits . . . constitutes compensable hours of work."  29 C.F.R. 553.221(c). Whether donning and doffing at home satisfies this definition is perhaps debatable, but the very fact that the regulation exists cuts against imposing a location restriction under present circumstances.

Second, Defendant has not produced, and the Court has not identified, any binding precedent that expressly requires donning and doffing activities to occur at the workplace.  The question whether donning and doffing activities must occur at the workplace is plainly a relevant factor for courts to consider.  For example, <u>Ballaris</u> expressly recognized that a rule prohibiting employees from leaving the workplace in uniform "weigh[s] heavily in favor of a determination that the activity is not excluded by the Portal-to-Portal Act."  370 F.3d at 911 (emphasis omitted).  But <u>Ballaris</u> did not hold that donning and doffing activities are compensable ***only*** if they must occur at work.  <u>See id.</u> at 910–12.  In fact, the Ninth Circuit has never reached such a conclusion.  <u>See Lemmon</u>, 538 F. Supp. 2d at 1206.

Third, the DOL guidelines emphasizing location as the focal point of the donning and doffing inquiry do not appear to warrant <u>Chevron</u> deference because they are not the product of "notice-and-comment rulemaking."  <u>Christensen v. Harris</u>

County, 529 U.S. 576, 587 (2000) (internal quotation marks omitted); see 29 C.F.R. § 790.1(b)–(c).  Thus, the Court is free to deviate from those regulations to the extent that the Court finds them to be unpersuasive.  Christensen, 529 U.S. at 587.  For the reasons discussed herein, the Court is not persuaded by the DOL's stance on the issue of a location requirement for donning and doffing activities, as set forth in the applicable regulations, the May 31, 2006 DOL Advisory Opinion, and in section 31b13 of the December 2000 Field Operations Handbook.  (Def.'s Req. Jud. Not., Exs. 23–24.)

Defendant argues that a location requirement is necessary because requiring Defendant to compensate Plaintiffs for time spent donning and doffing cannot be squared with the FLSA's "continuous workday" rule.[9]  Under the continuous workday rule, "the 'workday' is generally defined as 'the period between the commencement and completion on the same workday of an employee's principal activity or activities.'"  Alvarez II, 546 U.S. at 29 (quoting 29 C.F.R. § 790.6(b)).  In Alvarez II, the United States Supreme Court recognized that "any activity that is integral and indispensable to a principal activity is itself a principal activity under § 4(a) of the Portal-to-Portal Act."  546 U.S. at 37 (internal quotation marks omitted).  Furthermore, "when donning and doffing of protective gear are compensable activities, they may also define the outer limits of the workday."  Id. at 35 (emphasis added).  Thus, the Supreme Court held in Alvarez II that "during a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is excluded from the scope of that [section 4(a)], and as a result is covered by the FLSA."  Id.

At first blush, the continuous workday rule creates a conundrum because police officers who don and doff at home might be able to effectively extend the workday to include their commute time.  Moreover, the Court is cognizant of the

---

[9]As noted above, this is one of the rationales underlying the Court's holding in Abbe.  2007 WL 4146696, at *5.

1   Supreme Court's admonition in <u>Alvarez II</u> that it is "unlikely" that "Congress intended

2   to create an intermediate category of activities that would be sufficiently 'principle' to

3   be compensable but not sufficiently principal to commence the workday." <u>Id.</u> at 34.

4   Nevertheless, <u>Alvarez II</u> was expressly referring only to "walking time," not commuting

5   time, and in any event, the circumstances in this case present a unique scenario that

6   may in fact support precisely such an interpretation of section 4(a).  As a policy

7   matter, if the Court were to adopt Defendant's position, it would, in effect, permit

8   police departments to effectively insulate themselves from having to pay their officers

9   for donning and doffing activities that are otherwise compensable simply by permitting

10  their employees to don and doff at home.  Defendant has not sufficiently persuaded

11  the Court that this was in fact Congress's intent in enacting section 4(a).  Furthermore,

12  the Court well understands that negotiated MOUs describe in detail the components

13  of an LAPD officer's compensation.  Defendant could reasonably avoid any potential

14  problems created by the continuous workday rule by, in effect, contracting around it.

15        Even if the Court were to presume that donning and doffing activities must

16  occur at the workplace to be compensable, the nature of LAPD officers' work favors

17  donning and doffing at work even though neither the law nor the operative MOUs

18  mandate that it be done at the workplace.  (<u>See</u> Caballero Decl. ¶ 4, Ex. 1 [LAPD

19  Manual § 606.15] at 5; <u>see also</u> Maislin Decl. ¶ 12; Becker Decl. ¶ 8; Bass-Otis Decl.

20  ¶ 8; <u>cf.</u> Maislin 8/11/2008 Decl., Ex. A [2000 MOU art. 4.3(A), at 25], Ex. B [2003 MOU

21  art. 4.3(A), at 34], Ex. C [2006 MOU art. 4.3(A), at 35].)[10]  One of Defendant's own

22  Rule 30(b)(6) designees testified that approximately 90% to 95% of LAPD officers

23  dress at work.  (Caballero Decl., Ex. 11 [Garner Depo. Tr.] at 152, <u>see also</u> Caballero

24  Decl., Ex. 17 [Barclay Decl. ¶ 7]; <u>see, e.g.,</u> Sheldon Decl., Ex. 10 [Banks Test. Tr.] at

25  210], Ex. 13 [Paulson Test. Tr.] at 231, Ex. 16 [Maciel Test. Tr.] at 249; Maislin Decl. ¶

26  15.)  It is also apparent that the LAPD provides locker rooms at most of its station

27

28  [10]The evidentiary materials cited by Plaintiffs to dispute this fact do not give rise to a genuine issue of material fact.  (<u>See</u> Pls.' Resp. to Def.'s SUF (Docket No. 675) ¶ 60.)

houses (see Def.'s Reply to Pls.' Resp. (Docket No. 678) ¶¶ 64–65), as it would be impossible for 95% of the force to don and doff at home were this not the case. These facts are not subject to reasonable dispute, and therefore establish that, for all practical purposes, the nature of LAPD officers' duties requires them to don and doff at work.  See Lemmon, 538 F. Supp. 2d at 1206 (concluding that similar findings were "strong indicia that the donning and doffing of the uniform at the police station is a de facto requirement"); see also Maciel, 569 F. Supp. 2d at 1049 (explaining that the LAPD's provision of lockers "illustrates [the] LAPD's desire to have such activity take place on-site").

Furthermore, Plaintiffs have produced evidence showing that, among other things, "it is the longstanding policy and custom of patrol officers of the LAPD to get dressed and undressed . . . at their assigned LAPD station," that it is not practical or encouraged for officers to commute in their uniforms and gear, and that commuting in uniform is unsafe and places officers' family members and property in danger. (Caballero Decl., Ex. 11 [Garner Depo. Tr.] at 153, Ex. 13 [Maciel Depo. Tr.] at 166–67; Sheldon Decl., Ex. 13 [Paulson Test. Tr.] at 231.)  The evidence Defendant has produced to dispute Plaintiffs' evidence (see Def.'s SGI (Docket No. 668) ¶ 28) is plainly insufficient to create any genuine issues of material fact.  The mere fact that individual officers or even small groups of officers might don and doff at home cannot detract from the fact that the nature of LAPD officers' work effectively requires them to don and doff at work.  The evidence of the LAPD's provision of fare exemptions to those employees who commute to and from work in their uniforms using public transportation (see Maislin Decl., Ex. 5) is similarly insufficient to create a triable issue of fact.

Accordingly, for the foregoing reasons, the Court concludes that the donning and doffing of police uniforms constitutes an integral and indispensable part of Plaintiffs' principal activities.

**ii.  Done for the Benefit of the Employer**

1   <u>Alvarez I</u> unequivocally held that the donning and doffing of specialized safety

2   equipment benefits employers. 339 F.3d at 903.  In the specific context of law

3   enforcement, <u>Lemmon</u> recognized that specialized safety equipment worn by police

4   officers benefits police departments by "facilitat[ing] a ready and healthy police force,"

5   and "help[ing] police officers do their jobs more efficiently."  538 F. Supp. 2d at 1208.

6   Thus, the Court need only address whether Plaintiffs' acts of donning and doffing

7   police uniforms benefit the LAPD.

8       The LAPD Manual provides that "[a]ll employees regardless of rank shall wear

9   the prescribed uniform and personal equipment during their tours of duty."  (Caballero

10  Decl., Ex. 1 [LAPD Manual § 606.10] at 5.)  The Manual also contains pages upon

11  pages of detailed requirements regarding the specific items officers must wear and

12  how they must wear them.  (<u>See</u> <u>id.</u> [§§ 601–660.40] at 3–16; <u>see also</u> Caballero

13  Decl., Ex. 2 [LAPD Uniform and Personal Equipment Specifications Manual] at

14  19–63.)  As a matter of common sense, having a well-equipped and fully prepared

15  police force that is uniform in its appearance plainly benefits the LAPD because it

16  makes it easier for members of the public to identify police officers and helps to

17  legitimize officers' authority, thereby assisting officers in performing their job duties

18  more effectively.  That the police uniform commands so much attention in the LAPD's

19  rules and regulations strongly supports this conclusion.  Indeed, it is hard to imagine

20  why the LAPD would have such detailed requirements regarding its officers' uniforms

21  were it not benefitted thereby.  <u>See</u> <u>Lemmon</u>, 538 F. Supp. 2d at 1208 ("[I]f the

22  uniform is required by the [police department], there is a presumption that it benefits

23  the [department] since it would not have required the uniform otherwise.").  The

24  requirements that superior officers periodically conduct formal inspections of officers'

25  uniforms and equipment and that watch commanders inspect uniforms and equipment

26  at roll call on a daily basis, coupled with the fact that officers' failure to adhere to

27  uniform requirements may result in discipline, further buttress this finding.  <u>See</u>

28  <u>Maciel</u>, 569 F. Supp. 2d at 1049.  Defendant, by contrast, has failed to produce any

1    evidence that creates a genuine issue of material fact as to whether Plaintiffs' donning

2    and doffing activities benefit the LAPD.  Accordingly, such activities benefit the LAPD

3    as a matter of law.

4                    **iii.  Conclusion Re: Integral & Indispensable Part of Officers'**

5                         **Principal Activities**

6           For the reasons set forth above, the Court concludes that Plaintiffs' donning

7    and doffing activities are compensable under the FLSA as a matter of law.  The Court

8    proceeds to determine whether Defendant may nevertheless avoid liability for failing to

9    compensate Plaintiffs for such activities.

10                        **b.  "Changing Clothes" Exemption**

11          Even if donning and doffing activities are generally compensable, section 3(o)

12   of the FLSA excludes from compensation "any time spent in ***changing clothes*** or

13   washing at the beginning or end of each workday which was excluded from measured

14   working time . . . by the express terms of or by custom or practice under a bona fide

15   collective-bargaining agreement applicable to the particular employee."[11]  29 U.S.C. §

16   203(o); see also 29 C.F.R. § 785.26.  As noted above, it is undisputed that the MOUs

17   do not contain any express provisions providing for compensation of donning and

18   doffing activities, and that the LAPD has never compensated its officers for such

19   activities.  Thus, the operative question is whether the acts of donning and doffing

20   police uniforms and safety equipment constitute "changing clothes."

21          Alvarez I held that protective equipment such as Kevlar gloves, metal-mesh

22   leggings, and sleeves do not fall within the scope of section 3(o).  339 F.3d at 903;

23   see also Maciel, 569 F. Supp. 2d at 1049–50; Lemmon, 538 F. Supp. 2d at 1206–07.

24   Thus, pursuant to Alvarez I, Plaintiffs' Kevlar body armor and Sam Browne belt,

25   including the equipment and gear stored on the belt, do not fall within the scope of

26

27   _____

     [11]This provision restates "the well-established principle of labor law that a particular custom or
28   practice can become an implied term of a labor agreement through a prolonged period of
     acquiescence."  Turner v. City of Philadelphia, 262 F.3d 222, 226 (3d Cir. 2001).

section 3(o).

But the question remains whether police uniforms fall within the rule's ambit. Alvarez I teaches that a court faced with this issue must apply the "ordinary, contemporary, [and] common meaning" of the term "changing clothes," and, if necessary, construe the exemption against the defendant. 339 F.3d at 904–05 (internal quotation marks omitted).  While the term "clothes" is not so broad as to cover any item that might adorn one's person, "'[g]eneral work clothes (e.g., uniforms, pants, shirts or blouses) ***not intended to function as protection against a hazard*** are not considered to be personal protective equipment.'"  Id. at 905 (quoting 29 C.F.R. § 1910.1030(b)(1999) (emphasis added)).[12]  Likewise, as the Ninth Circuit explained in Ballaris, "clothes-changing that [is] not merely a convenience to the employee and that [is] directly related to the specific work remain[s] compensable." 370 F.3d at 910 (internal quotation marks omitted); see also 29 C.F.R. § 790.8 n.65.

As discussed in detail above, Plaintiffs have proffered sufficient evidence to establish that their police uniforms convey and legitimize their authority, increase officer safety, and help deter crime.  While the police uniform, like any uniform, also serves the purpose of identification, it constitutes more than mere attire.  Moreover, the Ninth Circuit's clear directive in Alvarez I is that any close calls must be construed against the party invoking section 3(o).  339 F.3d at 905.  Accordingly, the Court concludes, as a matter of law, that the section 3(o) exemption does not bar Plaintiffs' donning and doffing claim.

### c.  "De Minimis" Doctrine

Time spent donning and doffing is not compensable if the time required therefor is de minimis.  Mt. Clemens Pottery Co., 328 U.S. at 692; Lindow, 738 F.2d at 1062; see also Reich, 38 F.3d at 1126 n.1.  The purpose of this rule is to avoid the

---

[12]Section 1910.1030(b) is a regulation promulgated by the Occupational Safety and Health Administration ("OSHA") pursuant to the Occupation Safety and Health Act of 1970.  See 29 C.F.R. § 1910.1.

1   practical administrative difficulties created by the need to record small amounts of

2   time for payroll purposes. Lindow, 738 F.2d at 1062 (citing 29 C.F.R. § 785.47). "An

3   important factor in determining whether a claim is de minimis is the amount of daily

4   time spent on the additional work.  There is no precise amount of time that may be

5   denied compensation as de minimis.  No rigid rule can be applied with mathematical

6   certainty.  Rather, common sense must be applied to the facts of each case." Id.

7   (citations omitted).  Additional factors courts must consider include the size of the

8   aggregate claim (e.g., ten minutes per day, at five days per week, at 52 weeks per

9   year), and whether the plaintiff performed the work on a regular basis. Id. at 1063.

10          In the present action, both sides have submitted videos of LAPD officers

11   donning their police uniforms and safety equipment. (See Caballero Supp. Decl., Ex.

12   56; Sheldon Decl., Ex. 22.)  Defendant's video also shows the officer doffing his gear.

13   (See Sheldon Decl., Ex. 22.)  Plaintiffs' video, which was originally submitted in the

14   Maciel action, shows Maciel requiring nearly 36 minutes and fifty seconds to clean,

15   check, and don his gear. (See Caballero Supp. Decl., Ex. 56.)  The Court

16   wholeheartedly agrees with the Maciel court's finding that "Plaintiff's testimony that the

17   activity of donning and doffing his uniform took in excess of thirty minutes a day was

18   absurd." 569 F. Supp. 2d at 1056.  By contrast, Defendant's video shows an officer

19   donning and doffing his clothes in a total of approximately four minutes and nineteen

20   seconds. (See Sheldon Decl., Ex. 22 at 05:52–08:48, 08:51–10:14.)  This time frame,

21   however, is also unreasonable from a common-sense standpoint.  But Defendant has

22   submitted the testimony of a number of officers who state that they require a total of

23   approximately six to ten minutes to don and doff their clothes. (See, e.g., Maislin

24   Decl. ¶ 22; Becker Decl. ¶ 19; Bass-Otis Decl. ¶ 18; Sheldon Decl., Ex. 13 [Paulson

25   Test. Tr.] at 232–33, Ex. 14 [King Test. Tr.] at 238–39, Ex. 15 [Menza Test. Tr.] at

26   244.)  Thus, the evidence produced by the parties establishes that, at a minimum,

27   LAPD officers' donning and doffing activities last approximately six minutes per day.

28   In the aggregate, six minutes per day is not de minimis as a matter of law because

over the course of one year, it may amount to well over 20 hours of compensable work.  Moreover, Defendant has failed to persuade the Court that recording officers' donning and doffing activities would impose an undue burden on Defendant, given that the LAPD records overtime hours in six-minute increments.  (See Maislin 8/11/2008 Decl., Ex. A [2000 MOU art. 6.1(G), at 32], Ex. B [2003 MOU art. 6.1(G), at 43], Ex. C [2006 MOU art. 6.1(G), at 48].)  Accordingly, the Court holds that the de minimis doctrine is inapposite and does not preclude Plaintiffs from recovering compensation for their donning and doffing activities.

### d.  "Good Faith" Defense

Pursuant to section 9 of the Portal-to-Portal Act, an employer may not be held liable for violating the FLSA's minimum-wage or overtime-pay requirements if it relies in good faith on a written administrative regulation, order, ruling, or interpretation issued by the DOL.  29 U.S.C. § 259.  Defendant contends that, even if Plaintiffs are entitled to compensation for donning and doffing activities, Defendant should not be held liable for failing to compensate Plaintiffs for those activities because Defendant relied in good faith on a letter issued by the DOL in 1985 that advised Defendant that it need not pay LAPD officers for time spent "changing clothes."  (Maislin Decl., Ex. 9 at 193.)

Mark Perez, the LAPD's employment relations administrator and the person responsible for determining whether the 2006 MOU would grant compensation for donning and doffing activities, testified that, during the negotiations of that MOU, he declined to grant the LAPPL's request for such compensation based on his research of recent case law addressing the compensability of donning and doffing with respect to police officers and security guards.  (Sheldon Decl., Ex. 18 [Perez Depo. Tr.] at 266–69.)  Furthermore, the LAPD's Chief of Police, William Bratton, testified in the Maciel trial that he has never relied on a letter from the DOL in determining that Plaintiffs are not entitled to compensation for time spent donning and doffing.  (Caballero Decl., Ex. 14 [Bratton Test. Tr.] at 176.)  Moreover, from a practical

standpoint, the language in the 1985 DOL letter strongly suggests that the DOL was referring to the section 3(o) exemption discussed above when it issued its opinion. Alvarez I, however, made it unequivocally clear that section 3(o) does not cover specialized protective equipment.  339 F.3d at 903; see also Maciel, 569 F. Supp. 2d at 1049–50; Lemmon, 538 F. Supp. 2d at 1206–07.  Thus, no objective attorney, acting in good faith, who read the 1985 DOL letter and understands the applicable statutory and jurisprudential framework would have relied on that letter as covering the compensability of equipment such as Plaintiffs' body armor and Sam Browne belt. Accordingly, the Court declines to summarily adjudicate this issue in Defendant's favor, and finds that Plaintiffs' donning and doffing claim is not barred under the good faith defense.

### e.  Uniform, Maintenance & Equipment Allowance

All LAPD officers who hold the rank of Lieutenant or lower receive a Uniform, Maintenance and Equipment Allowance each year.  (Pls.' Resp. to Def.'s SUF (Docket No. 675) ¶ 98; see Maislin Decl., Ex. 7 [MOUs art. 3.2] at 87, 91, 95.)  Presently, officers eligible for the Allowance receive approximately $1,000 dollars.  (Pls.' Resp. to Def.'s SUF ¶ 99.)  It is not subject to reasonable dispute that the purpose of the Allowance is to compensate officers for costs associated with purchasing, cleaning, and maintaining their uniforms and safety equipment.  The name of the Allowance is itself indicative of this ("**Maintenance** Allowance").  The MOUs expressly provide that the Allowance "cover[s] the cost of uniform replacement, maintenance and other professional expenses."  (Maislin Decl., Ex. 7 [MOUs art. 3.2] at 87, 91, 95.) Furthermore, Defendant has provided the testimony of a number of LAPD officers who confirm that the purpose of the Allowance is to cover costs associated with replacing, cleaning, and maintaining police uniforms and equipment.  (See, e.g., Maislin Decl. ¶ 31; Becker Decl. ¶ 28; Bass-Otis Decl. ¶ 27; Sheldon Decl., Ex. 13 [Paulson Test. Tr.] at 234.)

By contrast, none of the evidence Plaintiffs have produced creates a genuine

issue of material fact regarding the Allowance's applicability to the present case.  (See
Pls.' Resp. to Def.'s SUF ¶¶ 100–02.)  Specifically, the deposition transcript of Gordon
B. Lawler, cited by Plaintiffs, establishes only that the Allowance is not intended to
compensate officers for "time spent getting into and out of" their uniform and
equipment.  (Caballero Supp. Decl., Ex. 51 [Lawler Depo. Tr.] at 368.)  Thus, it is
apparent that the Uniform, Maintenance and Equipment Allowance already
compensates Plaintiffs for the time and money they spend cleaning and maintaining
their uniforms and equipment.  See Maciel, 569 F. Supp. 2d at 1051.  In addition, as a
practical matter, allowing Plaintiffs to recover compensation for cleaning and
maintaining their uniforms and equipment would lead to inequities in the payment of
wages by according greater wages to those officers who clean and maintain their
uniforms and equipment more frequently or less expeditiously than their fellow
officers.

        Accordingly, Plaintiffs are not entitled to compensation for time spent cleaning
and maintaining their uniforms and safety equipment.  See Hellmers v. Town of
Vestal, 969 F. Supp. 837, 844 (N.D.N.Y. 1997) (holding that the plaintiff officer was
not entitled to compensation for time spent cleaning and maintaining his police
uniform where the applicable collective bargaining agreement provided officers with a
"stipend" for "'dry cleaning or purchasing new uniforms'").  In effect, the Court's
holding limits the definition of "donning and doffing" in this case to the actual robing
and disrobing of uniforms and safety equipment.

            *f. Conclusion Re: Compensability of Donning & Doffing Activities*

        For the reasons set forth above, the Court concludes that Plaintiffs' donning
and doffing activities are compensable under the FLSA as a matter of law.  However,
because Plaintiffs already receive a yearly stipend for cleaning and maintaining their
equipment, they are entitled to compensation for donning and doffing activities only
insofar as those activities do not involve cleaning and maintaining equipment.
Accordingly, consistent with the foregoing analysis, the parties' respective motions for

partial summary judgment are **GRANTED IN PART** and **DENIED IN PART**.

**D. EVIDENTIARY OBJECTIONS, MOTIONS TO STRIKE, AND REQUESTS FOR JUDICIAL NOTICE**

      Except as discussed below, the parties' evidentiary objections are **OVERRULED** on the ground that they are boilerplate objections or otherwise irrelevant because they involve evidence that the Court need not consider to resolve the present motions.

      **1. PLAINTIFFS' MOTION TO STRIKE**

      Plaintiffs move to strike the declarations of Stuart Maislin, Kevin Becker, and Yvette Bass-Otis on the ground that the declarants lack personal knowledge, and because their declarations are "self-serving, biased, conclusory, and contain hearsay statements." (Pls.' Objs. & Mot. Strike at 5.)  Plaintiffs also contend, under Rule 403, that the probative value of the declarations is substantially outweighed by the risk of prejudice created thereby.  The Court finds that Plaintiffs' arguments lack merit.  The motion to strike is therefore **DENIED**.

      **2. DEFENDANT'S MOTIONS TO STRIKE**

      Defendant moves to strike Plaintiffs' response to Defendant's statement of uncontroverted facts on the ground that Plaintiffs failed to comply with formatting requirements set forth in the Court's Scheduling and Case Management Order. Because Plaintiffs' failure to comply has had no material impact on the Court's adjudication of the parties' cross-motions, the motion is **DENIED**.

      Defendant also moves to strike the declaration of Plaintiffs' counsel, Eugene Senf, in which Senf sets forth the average donning and doffing times for approximately 900 plaintiff officers who responded to a survey conducted by Plaintiffs' counsel.  (See Senf Decl. ¶¶ 8–9.)  Defendant contends that the survey "is inherently flawed, biased and holds no evidentiary value," and argues that the sample survey attached as Exhibit A to the Senf declaration should be stricken pursuant to Rules 26 and 27 of the Federal Rules of Civil Procedure because it was not previously disclosed to Defendant.  (Def.'s Mot. Strike Senf Decl. at 2.)  In addition, Defendant

1  objects to the admissibility of the survey on hearsay grounds.  (See Def.'s Objs. to

2  Evid. Cited in Supp. of Pls.' Mot. Summ. J. at 63.)

3      "Surveys are admissible, if relevant, either as nonhearsay or through a

4  hearsay exception."  Prudential Ins. Co. of Am. v. Gibraltar Fin. Corp. of California,

5  694 F.2d 1150, 1155 (9th Cir. 1982).  "The proponent of the survey bears the burden

6  of establishing its admissibility."  Keith v. Volpe, 858 F.2d 467, 480 (9th Cir. 1988).

7  The technical unreliability of a survey goes to its probative value, not its admissibility.

8  Id.

9      Regardless of the methodology employed by Plaintiffs' counsel and the

10  technical veracity of the survey itself, Plaintiffs have not met their burden of

11  establishing that the survey is not hearsay, or that it fits within a hearsay exception.[13]

12  Accordingly, the Court **GRANTS** Defendant's motion to strike the Senf declaration and

13  the sample survey attached thereto as Exhibit A.

14      **3. REQUESTS FOR JUDICIAL NOTICE**

15      Under Rule 201 of the Federal Rules of Evidence, a court may take judicial

16  notice of any fact that is "not subject to reasonable dispute in that it is either (1)

17  generally known within the territorial jurisdiction of the trial court or (2) capable of

18  accurate and ready determination by resort to sources whose accuracy cannot

19  reasonably be questioned."  Fed. R. Evid. 201(b).  Federal district courts may take

20  judicial notice of documents filed in another court only to establish the fact of such

21  litigation and filings, not for the truth of the matters asserted therein.  Lee v. City of

22  Los Angeles, 250 F.3d 668, 688–90 (9th Cir. 2001).  A court may deny a request for

23  _____

24  [13]The survey may be admissible under the residual hearsay exception set forth in Rule 807 of the Federal Rules of Evidence.  For the survey to be admitted under that exception, Plaintiffs would have to prove that (1) the survey is being offered as evidence of a material fact; (2) the survey is more probative on the point for which it is offered than any other evidence that Plaintiffs can reasonably procure; and (3) the general purposes of the Federal Rules of Evidence and the interests of justice would best be served by admitting the survey.  Fed. R. Evid. 807.  On the other hand, Rule 807 also requires the proponent to give adequate notice of its intention to offer the survey into evidence, which Defendant's objections suggest did not occur here.  In any event, it is Plaintiffs' burden to prove these elements, and they have not done so here.  This evidence is therefore inadmissible.

25

26

27

28

judicial notice if it is irrelevant to the issues before the court.  See California v. M & P Invs., 308 F. Supp. 2d 1137, 1143 n.6 (E.D. Cal. 2003); see also Flick v. Liberty Mut. Fire Ins. Co., 205 F.3d 386, 397 n.7 (9th Cir. 2000); Woodham v. Ratelle, 5 F. App'x 635, 637 n.3 (9th Cir. 2001).

The fact that other courts have issued rulings in cases that might be legally and factually similar to the present cases is ultimately irrelevant to the Court's ruling on the present motions.  Defendant's requests for judicial notice of Exhibits 25–28 and 46 and Plaintiffs' request for judicial notice are therefore **DENIED**.  However, Defendant's request for judicial notice of the remaining documents (Exhibits 23–24, 29–42, and Maislin Decl., Ex. 9), all of which are public records and/or matters not subject to reasonable dispute, is **GRANTED**.

## IV.  CONCLUSION

For the foregoing reasons, the parties' cross-motions for partial summary judgment are **GRANTED IN PART** and **DENIED IN PART**.  Plaintiffs' motion to strike and Defendant's motion to strike Plaintiffs' response to Defendant's statement of uncontroverted facts are **DENIED**.  Defendant's motion to strike the Senf declaration and the sample survey attached as Exhibit A thereto is **GRANTED**.  Plaintiffs' request for judicial notice is **DENIED**, and Defendant's requests for judicial notice are **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**

DATED: May 5, 2009

_____

Judge Gary Allen Feess
United States District Court